## KER v. ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Argued April 27, 1886. — Decided December 6, 1886.

A plea to an indictment in a State court, that the defendant has been brought from a foreign country to this country by proceedings which are a violation of a treaty between that country and the United States, and which are forbidden by that treaty, raises a question, if the right asserted by the plea is denied, on which this court can review, by writ of error, the judgment of the State court.

But where the prisoner has been kidnapped in the foreign country and brought by force against his will within the jurisdiction of the State

whose law he has violated, with no reference to an extradition treaty, though one existed, and no proceeding or attempt to proceed under the treaty, this court can give no relief, for these facts do not establish any right under the Constitution, or laws, or treaties of the United States.

The treaties of extradition to which the United States are parties do not guarantee a fugitive from the justice of one of the countries an asylum in the other. They do not give such person any greater or more sacred right of asylum than he had before. They only make provision that for certain crimes he shall be deprived of that asylum and surrendered to justice, and they prescribe the mode in which this shall be done.

The trespass of a kidnapper, unauthorized by either of the governments, and not professing to act under authority of either, is not a case provided for in the treaty, and the remedy is by a proceeding against him by the government whose law he violates, or by the party injured.

How far such forcible transfer of the defendant, so as to bring him within the jurisdiction of the State where the offence was committed, may be set up against the right to try him, is the province of the State court to decide, and presents no question in which this court can review its decision.

The plaintiff in error, being convicted of embezzlement in a State court of Illinois, sued out this writ of error. The Federal question, which makes the case, is stated in the opinion of the court.

*Mr. C. Stuart Beattie* for plaintiff in error. *Mr. Robert Hervey* was with him on the brief.

*Mr. George Hunt,* Attorney General of Illinois, and *Mr. P. S. Grosscup* for defendant in error. *Mr. Leonard Swett* was with them on the brief.

Mr. JUSTICE MILLER delivered the opinion of the court.

This case is brought here by a writ of error to the Supreme Court of the State of Illinois. The plaintiff in error, Frederick M. Ker, was indicted, tried, and convicted in the Criminal Court of Cook County, in that State, for larceny. The indictment also included charges of embezzlement. During the proceedings connected with the trial the defendant presented a plea in abatement, which, on demurrer, was overruled, and the defendant refusing to plead further, a plea of not guilty was entered for him, according to the statute of that State, by

order of the court, on which the trial and conviction took place. ·

The substance of the plea in abatement, which is a very long one, is, that the defendant, being in the city of Lima, in Peru, after the offences were charged to have been committed, was in fact kidnapped and brought to this country against his will. His statement is, that, application having been made by the parties who were injured, Governor Hamilton, of Illinois, made his requisition, in writing, to the Secretary of State of the United States, for a warrant requesting the extradition of the defendant, by the Executive of the Republic of Peru, from that country to Cook County; that, on the first day of March, 1883, the President of the United States issued his warrant, in due form, directed to Henry G. Julian, as messenger, to receive the defendant from the authorities of Peru, upon a charge of larceny, in compliance with the treaty between the United States and Peru on that subject; that the said Julian, having the necessary papers with him, arrived in Lima, but, without presenting them to any officer of the Peruvian government, or making any demand on that government for the surrender of Ker, forcibly and with violence arrested him, placed him on board the United States vessel Essex, in the harbor of Callao, kept him a close prisoner until the arrival of that vessel at Honolulu, where, after some detention, he was transferred in the same forcible manner on board another vessel, to wit, the City of Sydney, in which he was carried a prisoner to San Francisco, in the State of California. The plea then states, that, before his arrival in that city, Governor Hamilton had made a requisition on the Governor of California, under the laws and Constitution of the United States, for the delivery up of the defendant, as a fugitive from justice, who had escaped to that State on account of the same offences charged in the requisition on Peru and in the indictment in this case. The requisition arrived, as the plea states, and was presented to the Governor of California, who made his order for the surrender of the defendant to the person appointed by the Governor of Illinois, namely, one Frank Warner, on the 25th day of June, 1883. The defendant arrived in the city of San

Francisco on the 9th day of July thereafter, and was immediately placed in the custody of Warner, under the order of the Governor of California, and, still a prisoner, was transferred by him to Cook County, where the process of the Criminal Court was served upon him and he was held to answer the indictment already mentioned.

The plea is very full of averments that the defendant protested, and was refused any opportunity whatever, from the time of his arrest in Lima until he was delivered over to the authorities of Cook County, of communicating with any person or seeking any advice or assistance in regard to procuring his release by legal process or otherwise; and he alleges that this proceeding is a violation of the provisions of the treaty between the United States and Peru, negotiated in 1870, which was finally ratified by the two governments and proclaimed by the President of the United States, July 27, 1874. 18 Stat. 719.

The judgment of the Criminal Court of Cook County, Illinois, was carried by writ of error to the Supreme Court of that State, and there affirmed, to which judgment the present writ of error is directed. The assignments of error made here are as follows:

" First. That said Supreme Court of Illinois erred in affirming the judgment of said Criminal Court of Cook County, sustaining the demurrer to plaintiff in error's plea to the jurisdiction of said Criminal Court.

" Second. That said Supreme Court of Illinois erred in its judgment aforesaid, in failing to enforce the full faith and credit of the Federal treaty with the Republic of Peru, invoked by plaintiff in error in his said plea to the jurisdiction of said Criminal Court."

The grounds upon which the jurisdiction of this court is invoked may be said to be three, though from the briefs and arguments of counsel it is doubtful whether, in point of fact, more than one is relied upon. It is contended in several places in the brief that the proceedings in the arrest in Peru, and the extradition and delivery to the authorities of Cook County, were not " due process of law," and we may suppose, although

it is not so alleged, that this reference is to that clause of Article XIV of the Amendments to the Constitution of the United St..tes which declares that no State shall deprive any person of life, liberty, or property "without due process of law." The "due process of law" here guaranteed is complied with when the party is regularly indicted by the proper grand jury in the State court, has a trial according to the forms and modes prescribed for such trials, and when, in that trial and proceedings, he is deprived of no rights to which he is lawfully entitled. We do not intend to say that there may not be proceedings previous to the trial, in regard to which the prisoner could invoke in some manner the provisions of this clause of the Constitution, but, for mere irregularities in the manner in which he may be brought into the custody of the law, we do not think he is entitled to say that he should not be tried at all for the crime with which he is charged in a regular indictment. He may be arrested for a very heinous offence by persons without any warrant, or without any previous complaint, and brought before a proper officer, and this may be in some sense said to be "without due process of law." But it would hardly be claimed, that after the case had been investigated and the defendant held by the proper authorities to answer for the crime, he could plead that he was first arrested "without due process of law." So here, when found within the jurisdiction of the State of Illinois and liable to answer for a crime against the laws of that State, unless there was some positive provision of the Constitution or of the laws of this country violated in bringing him into court, it is not easy to see how he can say that he is there "without due process of law," within the meaning of the constitutional provision.

So, also, the objection is made that the proceedings between the authorities of the State of Illinois and those of the State of California were not in accordance with the act of Congress on that subject, and especially that, at the time the papers and warrants were issued from the governors of California and Illinois, the defendant was not within the State of California and was not there a fugitive from justice. This argument is not much pressed by counsel, and was scarcely noticed in the Su-

preme Court of Illinois, but the effort here is to connect it as · a part of the continued trespass and violation of law which accompanied the transfer from Peru to Illinois.   It is sufficient to say, in regard to that part of this case, that when the governor of one State voluntarily surrenders a fugitive from the justice of another State to answer for his alleged offences, it is hardly a proper subject of inquiry on the trial of the case to examine into the details of the proceedings by which the demand was made by the one State and the manner in which it was responded to by the other. · The case does not stand, when the party is in court and required to plead to an indictment, as it would have stood upon a writ of *habeas corpus* in California, or in any States through which he was carried in the progress of his extradition, to test the authority by which he was held; and we can see in the mere fact that the papers under which he was taken into custody in California were prepared and ready for him on his arrival from Peru, no sufficient reason for an abatement of the indictment against him in Cook County, or why he should be discharged from custody without a trial.

But the main proposition insisted on by counsel for plaintiff in error in this court is, that by virtue of the treaty of extradition with Peru the defendant acquired by his residence in that country a right of asylum, a right to be free from molestation for the crime committed in Illinois, a positive right in him that he should only be forcibly removed from Peru to the State of Illinois in accordance with the provisions of the treaty, and that this right is one which he can assert in the courts of the United States in all cases, whether the removal took place under proceedings sanctioned by the treaty, or under proceedings which were in total disregard of that treaty, amounting to an unlawful and unauthorized kidnapping.

This view of the subject is presented in various forms and repeated in various shapes, in the argument of counsel.   The fact that this question was raised in the Supreme Court of Illinois may be said to confer jurisdiction on this court, because, in making this claim, the defendant asserted a right under a treaty of the United States, and, whether the assertion was

well founded or not, this court has jurisdiction to decide it; and we proceed to inquire into it.

There is no language in this treaty, or in any other treaty made by this country on the subject of extradition, of which we are aware, which says in terms that a party fleeing from the United States to escape punishment for crime becomes thereby entitled to an asylum in the country to which he has fled; indeed, the absurdity of such a proposition would at once prevent the making of a treaty of that kind. It will not be for a moment contended that the government of Peru could not have ordered Ker out of the country on his arrival, or at any period of his residence there. If this could be done, what becomes of his right of asylum?

Nor can it be doubted that the government of Peru could of its own accord, without any demand from the United States, have surrendered Ker to an agent of the State of Illinois, and that such surrender would have been valid within the dominions of Peru. It is idle, therefore, to claim that, either by express terms or by implication, there is given to a fugitive from justice in one of these countries any right to remain and reside in the other; and if the right of asylum means anything, it must mean this. The right of the government of Peru voluntarily to give a party in Ker's condition an asylum in that country, is quite a different thing from the right in him to demand and insist upon security in such an asylum. The treaty, so far as it regulates the right of asylum at all, is intended to limit this right in the case of one who is proved to be a criminal fleeing from justice, so that, on proper demand and proceedings had therein, the government of the country of the asylum shall deliver him up to the country where the crime was committed. And to this extent, and to this alone, the treaty does regulate or impose a restriction upon the right of the government of the country of the asylum to protect the criminal from removal therefrom.

In the case before us, the plea shows, that, although Julian went to Peru with the necessary papers to procure the extradition of Ker under the treaty, those papers remained in his pocket and were never brought to light in Peru; that no steps

were taken under them; and that Julian, in seizing upon the person of Ker and carrying him out of the territory of Peru into the United States, did not act nor profess to act under the treaty. In fact, that treaty was not called into operation, was not relied upon, was not made the pretext of arrest, and the facts show that it was a clear case of kidnapping within the dominions of Peru, without any pretence of authority under the treaty or from the government of the United States.

In the case of *United States* v. *Rauscher*, just decided, *ante*, 407, and considered with this, the effect of extradition proceedings under a treaty was very fully considered, and it was there held, that, when a party was duly surrendered, by proper proceedings, under the treaty of 1842 with Great Britain, he came to this country clothed with the protection which the nature of such proceedings and the true construction of the treaty gave him. One of the rights with which he was thus clothed, both in regard to himself and in good faith to the country which had sent him here, was, that he should be tried for no other offence than the one for which he was delivered under the extradition proceedings. If Ker had been brought to this country by proceedings under the treaty of 1870–74 with Peru, it seems probable, from the statement of the case in the record, that he might have successfully pleaded that he was extradited for larceny, and convicted by the verdict of a jury of embezzlement; for the statement in the plea is, that the demand made by the President of the United States, if it had been put in operation, was for an extradition for larceny, although some forms of embezzlement are mentioned in the treaty as subjects of extradition. But it is quite a different case when the plaintiff in error comes to this country in the manner in which he was brought here, clothed with no rights which a proceeding under the treaty could have given him, and no duty which this country owes to Peru or to him under the treaty.

We think it very clear, therefore, that, in invoking the jurisdiction of this court upon the ground that the prisoner was denied a right conferred upon him by a treaty of the United States, he has failed to establish the existence of any such right.

The question of how far his forcible seizure in another country, and transfer by violence, force, or fraud, to this country, could be made available to resist trial in the State court, for the offence now charged upon him, is one which we do not feel called upon to decide, for in that transaction we do not see that the Constitution, or laws, or treaties, of the United States guarantee him any protection. There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offence, and presents no valid objection to his trial in such court. Among the authorities which support the proposition are the following: *Ex parte Scott*, 9 B. & C. 446 (1829); *Lopez & Sattler's Case*, 1 Dearsly & Bell's Crown Cases, 525; *State v. Smith*, 1 Bailey, So. Car., Law, 283 (1829); *S. C.* 19 Am. Dec. 679; *State v. Brewster*, 7 Vt. 118 (1835); *Dow's Case*, 18 Penn. St. 37 (1851); *State v. Ross and Mann*, 21 Iowa, 467 (1866); *Ship Richmond v. United States*, (*The Richmond*,) 9 Cranch, 102.

However this may be, the decision of that question is as much within the province of the State court, as a question of common law, or of the law of nations, of which that court is bound to take notice, as it is of the courts of the United States. And though we might or might not differ with the Illinois court on that subject, it is one in which we have no right to review their decision.

It must be remembered that this view of the subject does not leave the prisoner or the government of Peru without remedy for his unauthorized seizure within its territory. Even this treaty with that country provides for the extradition of persons charged with kidnapping, and on demand from Peru, Julian, the party who is guilty of it, could be surrendered and tried in its courts for this violation of its laws. The party himself would probably not be without redress, for he could sue Julian in an action of trespass and false imprisonment, and the facts set out in the plea would without doubt sustain the action. Whether he could recover a sum sufficient to justify the action would probably depend upon moral aspects of the case, which we cannot here consider.

Opinion of the Court.

We must, therefore, hold that, so far as any question in which this court can revise the judgment of the Supreme Court of the State of Illinois is presented to us, the judgment must be

*Affirmed.*