(9 Misc. Rep. 600.)

PEOPLE ex rel. YOUNG v. HANNAN, Sheriff.[1]

(Supreme Court, Special Term, Monroe County. July, 1894.)

1. EXTRADITION—CONVICTION OF CRIME NOT SPECIFIED.
On habeas corpus to release a prisoner extradited for the crime of assault with intent to murder, and convicted of assault with intent to do great bodily harm, a single justice at special term will not order his discharge on the ground that, under the extradition treaty between United States and Great Britain, he could not be convicted of the lesser offense, but will remand the prisoner to await the decision of the general term on the legality of the conviction.

2. SAME—CONSTRUCTION OF TREATY.
The extradition treaty between the United States and Great Britain provides for the surrender of persons charged with assault with intent

[1] For application to general term, see 30 N. Y. Supp. 898.

to murder. Rev. St. U. S. §§ 5272, 5273, require that a person so surrendered shall be protected against violence until the end of his trial "for the crime specified in the warrant of extradition." *Held,* that one extradited from England for assault with intent to murder cannot be convicted of assault with intent to do great bodily harm.

Habeas corpus by Charles Young, convicted of assault with intent to do great bodily harm. Quashed.

H. J. & W. H. Sullivan and P. McIntyre, for relator.
Howard H. Widener, Asst. Dist. Atty., for defendant.

DAVY, J. The relator, Charles Young, was indicted by the grand jury of Monroe county, in the month of June, 1893, for the crime of assault with intent to murder Herbert Guerin. The indictment was sent from the court of oyer and terminer to the sessions, in which court the relator gave bail for his appearance to answer the indictment, when prosecuted. Shortly thereafter he escaped to England, from which country he was extradited for the said crime. He was subsequently arraigned on the indictment and pleaded not guilty. At the commencement of the trial he objected to the form of the indictment, and to being tried for any other crime than assault in the first degree. He contended that he had been brought from England upon a warrant of extradition charging him with assault with intent to commit murder, and for that crime, and that only, he asked to be tried. This request was denied by the court, to which ruling the defendant excepted. Upon the trial he conducted his defense without the aid or assistance of counsel. The trial resulted in his being convicted of assault in the second degree. He was then sentenced to be confined in the state prison at Auburn for the period of four years and six months. The relator then presented a petition to this court, in which he alleged that he was unlawfully restrained of his liberty and imprisoned in the county jail of Monroe county. Upon this petition a writ of habeas corpus was issued, directing the sheriff of said county to produce the relator, so that the court might inquire into the cause of his imprisonment. A return was made by the sheriff to the writ, stating, in substance, that the relator was held by him, as such sheriff, by virtue of a bench warrant issued and delivered to him by the district attorney of the county of Monroe, upon an indictment duly found by the court of oyer and terminer, whereby the relator was charged with the crime of assault in the first degree. To this return the relator answered, denying that the imprisonment was legal. He also offered in evidence the warrant of extradition and the testimony taken upon the trial, showing that he was extradited from England for the crime of assault with intent to murder, and that he was convicted of a minor offense, namely, assault with intent to do bodily harm. The relator contends that, under the treaty between Great Britain and the United States, he could not be tried or convicted of any other offense than the one for which he was extradited.

The right of this government to demand from Great Britain the surrender of Young, as a fugitive from justice, depended upon the

extradition treaty existing between the two countries, which provides, among other things, "that all persons charged with the crime of assault with intent to murder, committed within the jurisdiction of either government, who seek an asylum, or shall be found, within the territory of the other, shall, upon mutual requisitions, be delivered up to justice." The question whether a person surrendered under the treaty between Great Britain and the United States could be tried for any offense other than that for which he was extradited once formed between the two governments the subject of a good deal of controversy. A wide difference of opinion also prevailed in the federal and state courts upon that point until the decision of the supreme court in the case of U. S. v. Rauscher, 119 U. S. 407, 7 Sup. Ct. 234. Prior to this decision, and in 1869, a supplemental act to the treaty was passed by congress, which provides, in substance, that, where a person was delivered by a foreign government for the purpose of being tried for a crime for which he had been extradited, he should be protected against lawless violence until the final conclusion of his trial for the crime or offense specified in the warrant of extradition. Rev. St. U. S. §§ 5272, 5275. The English parliament also passed an act known as the "Extradition Act of 1870" (33 & 34 Vict. c. 52), which provides "that a fugitive criminal shall not be delivered up, unless by the law of the foreign country or by agreement, he shall not be tried for any but the extradited offense, until he has an opportunity of returning to that country, and the same protection from prosecution is secured in favor of fugitives delivered to that country." Rauscher, who was a second mate on the American ship Chapman, was extradited from Great Britain to the United States upon the charge of having murdered, on the high seas, a member of the ship's crew, by the name of Janssen. He was subsequently tried and convicted for a minor offense, namely, cruel and inhuman punishment of the same seaman. His conviction was obtained upon the identical facts proved in the extradition proceedings. The case was taken to the supreme court of the United States, which held that Rauscher was illegally convicted; that under the treaty and laws of congress he could not be tried and convicted of any offense except that for which he was extradited, even though the offense for which he was tried might be of a minor or lesser grade than the one for which he was surrendered. Mr. Justice Miller, who delivered the opinion of the court, said "that it was not intended that the treaty should be used for any other purpose than to secure the trial of the person extradited for one of the offenses enumerated in the treaty." He also said that if there was any doubt as to the construction of the treaty the language of sections 5272 and 5275, Rev. St. U. S., would be conclusive upon the courts as to the right of extradited persons. "That right," he said, "as we understand it, is that he shall be tried only for the offense for which he was delivered up, and that if not tried for that, or after trial and acquittal, he shall have a reasonable time to leave the country, before he is arrested upon the charge of any other crime committed previous to his extradition." Mr. Justice Gray, in concurring in the decision of the court, based it upon the single ground

that by the act of congress of 1869 the prisoner could not be tried for any other crime than the one specified in the warrant of extradition.    In Kerr v. Illinois, 119 U. S. 443, 7 Sup. Ct. 225, it was held that where an extradited person is brought to this country he comes clothed with the protection which the nature of such proceedings, and the true consideration of the treaty, give him.    One of the rights with which he was thus clothed was that he should be tried for no other offense than that named in the warrant of extradition. In the case of People v. Cross, 135 N. Y. 540, 32 N. E. 246, Judge O'Brien, in referring to the Rauscher Case, states the point very clearly.    He said that when the United States took Rauscher "its faith and honor were pledged, at least impliedly, to the effect that it would not permit its courts to try him for any other offense, even though it might be of a lesser grade, than that upon which he was surrendered."    It appears, therefore, from these decisions, that the jurisdiction given by the treaty to the courts to try criminal offenders is limited to the particular offense for which extradition may be had, and which is specifically designated in the warrant of extradition.

The learned district attorney contends, however, that the rule laid down in the Rauscher Case is not controlling in this case, for the reason that the crime of assault with intent to murder, for which the relator was extradited, includes within itself the crime of assault in the second degree.    This contention, in my judgment, cannot be maintained.    By section 278 of the Code of Criminal Procedure, an indictment must charge but one crime, and in one form, except as provided in section 279.    That section provides that, where the act complained of constitutes different crimes, such crimes may be charged in separate counts in the indictment.    It is enacted by section 217 of the Penal Code that a person ·who, with intent to kill a human being, assaults another with a loaded firearm, or any other deadly weapon likely to produce death, is guilty of assault in the first degree.    Section 218 of the Penal Code also provides that a person who, with intent to injure another, does certain acts, may be found guilty of assault in the second degree, where the circumstances do not amount to the crime of assault in the first degree.    The Code therefore makes a distinction between the crimes of assault in the first and second degrees.    The indictment in this case contains separate counts.    The first count charges that Young, on the 31st day of March, 1893, at the city of Rochester, unlawfully and feloniously fired a loaded revolver at Herbert Guerin, with intent to kill, which constitutes the crime of assault in the first degree.    The second count alleges the assault to have been made with intent to do bodily harm, which comes under the statutory offense of assault in the second degree.    The two degrees of crime, therefore, are not blended together in one count; but they are distinctly and separately stated, so that the relator could have been tried on the first count only in the indictment.    The second count is based upon an entire absence of any intent to kill.    The intent to kill is the distinguishing element or feature between assault in the first and second degrees.    In order to justify a con-

viction of an assault with intent to kill, it must appear from the evidence that if the assaulted party had died the accused could be convicted of murder. To justify a conviction of assault in the second degree the facts and circumstances must be so entirely different as not to amount to the crime of assault in the first degree. The offenses are so entirely different in their character and severity of punishment that if the district attorney had abandoned the first count in the indictment, and the relator had been tried and convicted on the second count, there could, it seems to me, be no question as to the illegality of such a conviction, under the treaty. I am unable, therefore, to discover any sound reason for holding that an extradited fugitive may be tried for the extradited crime, and convicted of a minor offense, for which he could not have been extradited. The real object of extraditing Young was to secure his presence in court for the purpose of trying him for the specified crime named in the warrant of extradition. To obtain his surrender, therefore, for the purpose of trying him for assault with intent to murder, and then permitting the jury, against his protest, to convict him of an assault with intent to do bodily harm, which is a minor offense, and one for which he could not have been extradited, is, in my opinion, a violation of the laws of congress and the treaty between this government and Great Britain, as interpreted by the supreme court of the United States in the Rauscher Case. The good faith of both countries, after having entered into a treaty naming certain crimes as the ones for which extradition may be had, demands that the extradited criminal shall not be tried, convicted, or punished for any other crime or offense than the one for which he was extradited and named in the warrant of extradition. When Young requested to be tried for the extradited crime, and for that offense only, the court, in my judgment, should have granted his request. It was held in Ex parte Coy, 32 Fed. 911, that the relator had a right to claim exemption from trial upon any other charges than those mentioned in the extradition proceedings. In U. S. v. Watts, 14 Fed. 130, the court held that an extradited fugitive cannot be held to answer for an offense for which his surrender could not have been asked, and would not have been granted. I am aware that the opposite view is maintained by Mr. Moore in his work on Extradition (volume 1, § 171), published since the decision in the Rauscher Case. He says:

"That the rule that an extradited person cannot be tried for an offense other than that for which he was surrendered, it does not necessarily follow that conviction and sentence must be for that crime and no other. Thus if a charge of the crime for which the extradition was granted includes within itself a charge of another, there appears to be no reason why, upon a trial for the crime as charged, there may not be a conviction for the lesser crime which it includes. * * * But the trial," he says, "must be for the extradition crime; and it is only in a case where, upon a trial for that crime, conviction may be had of another because included in it."

An opinion of the department of state, to the same effect, is found in a letter from Mr. Bayard, as secretary of state, to Mr. Essery, May 26, 1885. It appears from the correspondence with the state department that a man by the name of Henderson was

extradited from the United States to Canada on the charge of asault with intent to commit murder. The indictment upon which the prisoner was tried contained two counts,—one for assault with intent to kill, and the other for assault to do bodily harm. He was acquitted on the first count, and convicted on the second. The learned secretary, in his letter, says:

"Were assault with intent to do bodily harm an offense entirely distinct from the assault with intent to kill, then the question put in the petition which accompanied your letter might be considered; but there is no variance between the two offenses. Under these circumstances this department holds that there is no ground whatever for the intervention of this government in the matter."

The views of so learned and able a writer on international law as Mr. Moore, and the opinion of so distinguished a lawyer and statesman as Ex-Secretary Bayard, are entitled to great weight; but it seems to me that their opinions are in conflict with the reasoning of Mr. Justice Miller in the Rauscher Case, and they certainly do not accord with my views. My attention, however, has not been called to a case where the precise question raised upon this motion has been decided by any of the state or federal courts. The question, therefore, may be regarded as novel, and not entirely free from doubt. I have therefore reached the conclusion that the relator ought not to be discharged, and permitted to return to England, until the general term shall have passed upon the legality of his conviction. The writ of habeas corpus granted herein is quashed, and the relator is remanded to the sheriff of Monroe county, who is directed to enforce the sentence and judgment of the court of sessions.