Lawrence **BROOKS**, Petitioner,

v.

Dr. Stanley **BLACKLEDGE**, Warden, Central Prison, Raleigh, North Carolina, Respondent.

No. C–C–72–177.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Jan. 24, 1973.

Richard N. League, Asst. Atty. Gen., North Carolina Department of Justice, Raleigh, N. C., for respondent.

## ORDER

McMILLAN, District Judge.

During the early morning hours of October 14, 1971, Lawrence Brooks, petitioner, was arrested near Belmont, North Carolina, and on the same day was charged in the Superior Court of Gaston County, North Carolina, with possession of burglary tools, breaking and entering, and violation of the firearms act. On October 15, 1971, a further warrant issued charging him (under the name of Wayne Brooks) with being a fugitive from another state.

Brooks was convicted on December 9, 1971, of possession of burglary tools, and a sentence of ten years in prison was imposed. He gave notice of appeal in open court.

While the appeal was pending, Brooks was committed to the North Carolina prison system; a month later he was sent to a prison work camp at Statesville; and subsequently he was transferred to a road gang in Shelby. On March 6, 1972, he escaped from the Shelby road gang, and traveled "approximately one-quarter of a mile into South Carolina in a circuitous course of about three miles." Several hours after his escape Brooks was captured *in South Carolina* by two North Carolina prison guards who had been led to his hiding place by a bloodhound named "Justice" that had "accidently found petitioner's scent trail." The prisoner was returned to North Carolina at gunpoint and was eventually charged with escape.

On or about April 8, 1972, it was discovered that it was only through administrative error that Brooks had been sent to work on a road gang in the first place. In Brooks v. Holland, civil action No. C–C–72–188, this court found (in an order of November 6, 1972) that "[a]pparently the custom and routine of the prison system is that persons convicted are kept in 'safekeeping' in a local jail or in Central Prison until their appeals are determined, and that they are not sent out on road gangs to do hard manual labor until their convictions have become final." Since through apparent inadvertence Brooks' notice of appeal had not been communicated to the prison authorities, he had been classified for road camp instead of for safekeeper status. To correct the situation, as soon as the oversight had been discovered in April, 1972, Brooks had been immediately returned to safekeeping status in Central Prison in Raleigh to await the outcome of appeal.

On August 2, 1972, the North Carolina Court of Appeals affirmed Brooks' conviction for possession of burglary tools, State v. Brooks, 15 N.C.App. 367, 190 S.E.2d 338 (1972), and on September 12, 1972, the North Carolina Supreme Court dismissed his appeal *ex mero motu* and denied his petition for writ of certiorari.

State remedies have been exhausted; on May 24, 1972, the North Carolina Supreme Court denied a petition for habeas corpus based on the above facts.

Brooks now seeks habeas corpus in this court, arguing that his constitutional rights have been violated in two ways:

ARGUMENT ONE: Brooks seeks habeas corpus relief from a valid conviction of a felony because, *after* the conviction, he was illegally arrested in South Carolina and, without extradition, was forcibly brought back to the North Carolina prison by North Carolina prison guards.

The state says the perhaps illegal bloodhound pursuit into and forcible abduction from South Carolina does not vitiate the conviction; and the Attorney General refers to Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) and Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421 (1886) which hold that an otherwise valid conviction is not vitiated by the fact that the prisoner was illegally brought from another state and into the jurisdiction of the trial court by forcible abduction.

It is by no means clear that *Frisbie, et al.*, are still (or, more euphemistically,

that they should continue to be) good law; and if Brooks were seeking damages, or even relief from punishment (either by court or by prison or parole authorities) for his *escape* from the North Carolina prison, serious thought would have to be given to his claim. Kidnappers, even though law officers, need no encouragement from courts. See the comments of Friendly, J., in United States v. Edmons, 432 F.2d 577, 583 (2nd Cir. 1970), as follows:

> "We do not find *Frisbie*, which sustained a Michigan prosecution of a defendant allegedly abducted from Illinois by Michigan officers, and its predecessors going back to Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), to be a truly persuasive analogy. These cases were decided before the Fourth Amendment as such was held applicable to the states, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and thus rested only on general considerations of due process or, as in *Frisbie*, also on a claimed violation of the Federal Kidnapping Act. Whether the Court would now adhere to them must be regarded as questionable. See Pitler, 'The Fruit of the Poisonous Tree' Revisited and Shepardized, 56 Calif.L.Rev. 579, 599–601 (1968). Furthermore, Frisbie v. Collins arose on an application for federal habeas corpus filed many years after Collins' state trial at which no objection appears to have been raised, and the Court's opinion has overtones of the historic limitation of habeas corpus to jurisdictional matters which was to be repudiated at the next term in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953)."

However, Brooks is not attacking his *later* treatment—whatever it was—based on the escape; he is attacking his *former* conviction because of the state's *later* mis-step in retrieving him from South Carolina.

It appears to me that the *Frisbie* principle can fairly be applied to these facts.

Constitutional guaranties of due process and of freedom from unreasonable (searches and) seizures can be satisfied in the context of 42 U.S.C. § 1983 suits or habeas corpus proceedings to test directly the propriety of the abduction itself; law authorities who indulge in kidnapping must run the risk of damage suits and inability to convict for the offense (escape, in this case) that has not yet been prosecuted. Nothing in the Constitution, however, requires that *past* convictions be set aside because of later violations of constitutional rights.

■ Therefore, I do not find any basis for habeas corpus relief in petitioner's first argument.

Brooks argues that the technical application of North Carolina General Statutes § 15–184 (1971) somehow gives him a more colorable claim in the context of his illegal recapture because since he had given notice of appeal a stay of execution issued during the pendency of appeal. However, the essence of § 15–184 has been obliterated by North Carolina General Statutes § 15–186.1, which requires that credit be given for jail time served pending outcome on appeal. In short, Brooks escaped from custody and was returned to custody; his technical classification as a prisoner adds no dimension to a claim that centers on the proposition that he was illegally returned to the State of North Carolina.

■ ARGUMENT TWO: This court finds no constitutional merit in Brooks' imaginative argument that he is being forced to serve his sentence on the installment plan, which (he alleges) is prohibited by law. Admittedly, Brooks has been classified, reclassified, and classified again within the prisons system. Also it is true that in all probability one such classification was the result of an administrative foul-up. Nonetheless, Brooks is receiving credit against his ten-year term for every single day that he has been held in captivity, regardless of his various administrative classifications. [And if credit has been withheld by the North Carolina Prisons Depart-

ment in defiance of North Carolina General Statutes §§ 15–176.2 and 15–186.1 Brooks can obtain credit *via* lawsuits in the state courts.] Hence, his claim of installment incarceration must fail.

It is therefore ordered, that all claims for relief be, and they are hereby denied, and that the petition for a writ of habeas corpus be, and it is hereby dismissed.