### In re the Extradition of Christian Jacques DAVID.
### Civ. No. 73–300–E.

United States District Court,
E. D. Illinois.
Feb. 19, 1975.

**522**

---

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., East St. Louis, Ill., for petitioner.

Paul M. Caldwell, Benton, Ill., Charles J. O'Laughlin, and Michael J. Rovell, Chicago, Ill., for respondent.

### ORDER

FOREMAN, District Judge:

Now before the Court is defendant's Motion for an Order Compelling Answers to Interrogatories. The interrogatories seem to concern the general issue of whether David was kidnapped and brought to the United States. Plaintiff has filed objections to the answering of these questions, claiming that they are irrelevant. It is the Government's position that the kidnapping, if it did occur, did not deprive this Court of jurisdiction nor would it constitute a defense to this extradition proceeding.

David seems to contend that he was kidnapped by agents of the United States from Brazil and returned to New York. Subsequently, on December 1, 1972, he entered a plea of guilty to Count 7 of an eleven-count indictment which charged David along with sixteen other defendants with various narcotic violations. Chief Judge Jacob Mishler made patient, painstaking efforts to insure that David understood that his entry of a plea of guilty did not protect him from subsequent extradition. The transcript of David's guilty plea also clearly reflects that there was no agreement of any kind between David and the United States Attorney's Office.

David's contentions have never been spelled out with specificity. In his answer, David presents only the conclusory allegation "that [David] was brought to the United States illegally by employees, agents, or deputies of the United States Government." He has not alleged torture by agents of any Government.

█ In the analogous area of interstate extradition the rule has long been that one state still has jurisdiction to try a criminal defendant even where the defendant was forcibly abducted from another state by agents of the state which eventually tried him. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L. Ed. 541 (1952); Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). See also United States v. Miller, 384 F. Supp. 56 (S.D.Fla.1974)

In a thorough analysis of the Ker-Frisbie doctrine, the Court of Appeals for the Second Circuit has noted criticisms thereof and its partial erosion. United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974). Placing primary reliance upon Rochin v. California, 342 U.S. 165, 77 S.Ct. 205, 96 L.Ed. 183 (1952) and United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Second Circuit held that the requirement of due process in obtaining a conviction extends to the pretrial conduct of law enforcement authorities and stated that if the defendant could prove his claims that he was kidnapped from Uruguay and was severely tortured, the Court would lack jurisdiction to try him.

In a subsequent decision, the Second Circuit severely limited its Toscanino holding. United States ex.rel. Lujan v. Gengler, 510 F.2d 62 (2d Cir. 1975). The federal agents surreptitiously induced a defendant to fly from Argentina to Bolivia. In Bolivia he was arrested by Bolivian police who were not acting at the direction of their own superiors or Government, but as paid agents of the United States. The Bolivian officials placed him on a plane bound for New York. Upon his arrival in New York,

he was formally arrested by federal agents. The Court stated that the arrest in *Lujan* may have been unconventional, but it did not afford grounds for challenging the jurisdiction of the Court. In distinguishing *Toscanino*, the Court stated, "In holding that *Ker* and *Frisbie* must yield to the extent they were inconsistent with the Supreme Court's more recent pronouncements, we scarcely could have meant to eviscerate the *Ker-Frisbie* rule, which the Supreme Court has never felt impelled to disavow."

*Toscanino* had alleged almost inhuman Government misconduct with interrogation methods that included beatings, starvation, and the administration of electrical shocks. The treatment was so shocking that the Court characterized it as being "reminiscent of the horror stories told by our military men who returned from Korea and China." (500 F.2d at 270).

Despite severe criticisms of the *Ker-Frisbie* doctrine, the Supreme Court has never seen fit to reverse those decisions and this court feels bound by them. Additionally, this Court notes that David's allegations are much closer to those of *Lujan*, rather than those of *Toscanino*. David has not alleged the egregious and shocking type of torture that was alleged in *Toscanino*. Thus, assuming *arguendo* that David was kidnapped, his kidnapping was not so egregious as to bring it within the *Toscanino* exception to the *Ker-Frisbie* doctrine, if indeed the exception exists.

Another major impediment to David's utilization of the alleged kidnapping as a device to assert that this Court is without jurisdiction is his plea of guilty entered in New York. It appears from the transcript of that proceeding that David and his attorney were very much aware that extradition proceedings might be instituted against him. None-theless, David with the assistance of counsel entered a knowing and intelligent. plea of guilty. If he had desired, he could have raised the issue of the alleged kidnapping at that time, as both *Toscanino* and *Lujan* did. That would have been the proper time for raising the kidnapping issue. His failure to do so constitutes a waiver of his right to assert the lack of jurisdiction at this time. By pleading guilty to the federal narcotics charge in New York, he submitted himself to the jurisdiction of the United States and, thus, he became eligible for extradition.

Moreover, the Court has grave doubts about whether a kidnapping could ever deprive the Court of jurisdiction in an extradition proceeding or serve as a defense therein. *Toscanino* was a criminal action and the decision was predicated upon the Fifth Amendment which provides that a person can not be deprived of life, liberty or property without due process of law. Unlike the criminal trial courts in *Lujan* and *Toscanino*, this Court is not able to deprive David of his liberty. The issue in this case is a very narrow one i. e. whether David should be returned to France to stand trial on a pending criminal charge. This Court can not and will not impose any punishment upon David.

For the foregoing reasons, David's assertion of the alleged kidnapping can not be a defense to this extradition proceeding. Nor can it deprive the Court of jurisdiction in this matter. Thus, the Court will not order the plaintiff to answer interrogatories 13, 14, 15 and 16. Thus, David's Motion for an Order Compelling Answers to these Interrogatories is hereby denied. Similarly, the request for witnesses who will testify regarding the kidnapping is hereby denied.