Frederic S. Berman, J.
In what appears to be a case of first impression in New York, the defendants are charged by misdemeanor information with the crimes of assault in the third degree and petit larceny. The facts upon which this motion by defendant Bacon to dismiss the information is based are not in dispute. It has been stipulated that the alleged crimes occurred aboard a PATH train en route to New Jersey while it was still in New York. The complaining witness was able to pull the emergency cord, and pursuant to normal emergency procedures, the train proceeded to the next station (Hoboken, New Jersey), where a Port Authority patrolman boarded the train and placed defendants under arrest. After initial processing at the PATH facilities located in the Hoboken station, the defendants were taken to the Hoboken police station for booking. Thpre, the arresting officer was informed by a detective of the Hoboken Police Department that since the alleged crime had been committed while the train was still in New York, the proper site for booking and arraignment was New York. According to the papers submitted by the People, the arresting officer questioned the legality of returning the defendants to New York, "but was silenced when his immediate superior, Lieutenant Johnson, deferred to the detective.” The arresting officer, by his sworn affidavit, states that after discussing the issue with the Hoboken detective, he was led to believe that the appropriate course of action was to return the defendants to New York for arraignment. The defendants were thereupon transported back to New York, where they were eventually charged at the Sixth Precinct in New York County.
The defendants contend that jurisdiction over their person should be declined and the information dismissed on the ground that the Port Authority police officers failed to comply with the New Jersey Uniform Fresh Pursuit Law (NJ Stat, §2 A: 155-1 etseq.).
That law sets forth certain procedural requirements in instances where persons are arrested in New Jersey after pursuit across State lines by police officers from other States. It requires that arraignment of such persons in New Jersey and formal extradition must precede their return to the State from which they fled. Section § 2A:155-4 makes the New Jersey Uniform Fresh Pursuit Law applicable to "Any mem *681 ber of a duly organized state, county or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest him”.
It is clear from the language of section 2A:155-4 of the New Jersey Statutes that the Port Authority police officers who arrested and later transported defendants back to New York are not subject to the New Jersey Fresh Pursuit Law.
First, the Port. Authority police officers do not belong to a police unit of another State. The Port Authority of New York and New Jersey is an autonomous bi-State agency with jurisdiction over many facilities. It was created by interstate compact between, and is subject to the legislative statutes of, the States of New York and New Jersey (L 1921, ch 154; NJ Stat, § 32:1-1 et seq.).
Second, the arresting officer did not enter New Jersey from another State; he had been stationed in Hoboken, New Jersey at the PATH railroad terminal, and did not cross State lines in order to arrest the defendants.
Third, there was no "fresh pursuit” in the instant case. According to section 2A:155-2 of the New Jersey Statutes "fresh pursuit” is to be defined as the common-law meaning of that term. A representative definition is contained in Carson v Pape (15 Wis 2d 300, 308). "The term 'fresh pursuit’ refers to the common-law right of a police officer to cross jurisdictional lines in order to arrest a felon.”
The defendants primarily rely upon People v Walls (35 NY2d 419), as support for the proposition that New York should decline to exercise its jurisdiction and refuse to bring this case to trial. Conversely, the People similarly cite the Walls case as authority for denying defendants’ application.
In Walls, New York City police officers, having failed to arrest defendants in New York, pursued and ultimately apprehended them in the Lincoln Tunnel slightly beyond New York’s jurisdiction. The defendants there claimed that New York lacked the power to prosecute because the arresting officers failed to comply with the New Jersey Fresh Pursuit Law.
The instant case may be factually distinguished from Walls, where the arresting officers were members of a municipal peace unit of another State (New York) and had entered New Jersey in fresh pursuit of the defendants.
*682 However, even if the Fresh Pursuit Law were applicable to the present case, defendants’ argument would still fail. The court in Walls stated that noncompliance with the New Jersey statute does not deprive the New York courts of jurisdiction. "In a proper case, this State may decline to exercise its jurisdiction, rather than exploit the fruits of unauthorized conduct * * * This is not a case where the officers acted without probable cause or willfully neglected to complete the post arrest procedures required by New Jersey law. On the contrary when they arrested the defendants and returned them to New York they reasonably — although mistakenly— believed they were authorized to act as they did.” (Walls, supra, p 424)
The court, in Walls, bases its decision upon the Supreme Court cases of Frisbie v Collins (342 US 519) and Ker v Illinois (119 US 436). The Ker-Frisbie rule is succinctly stated in Frisbie (p 522): "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court’s jurisdiction by reason of a 'forcible abduction.’ ”
In more recent lower Federal court decisions the Ker-Frisbie rule has been somewhat eroded. In United States v Toscanino (500 F2d 267, 272), the government was barred "from realizing directly the fruits of its own deliberate and unnecessary lawlessness in bringing the accused to trial.” There the defendant had been kidnapped, tortured, and beaten by United States agents, and returned to American territory in violation of the laws of three separate countries (see, also, United States ex rel. Lujan v Gengler, 510 F2d 62).
However, the facts of the instant case do not evidence either failure to comply with New Jersey law or violation of the defendants’ rights. Neither was there intrusion on New Jersey’s territorial rights, as defendants contend, for both the arrest of the defendants and the alleged commission of the crime took place in areas under the jurisdiction of the Port Authority and its Police Department (L 1962, ch 209, § 12). The defendants’ allegation of lack of good faith on the part of the officers must also fail. That the defendants were first brought to Hoboken, New Jersey, for booking and arraignment, and their concurrence with the opinion expressed by the New Jersey detective concerning jurisdiction can only be interpreted as evidencing good faith on their part.
Accordingly, the motion to dismiss is denied.