**William B. SMITH, Petitioner,**

v.

**Vinson THOMPSON, etc., Respondent.**

**No. CIV-2-76-67.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

May 21, 1976, June 7, 1976 and
August 3, 1976.

---

William Smith, pro se.

Michael Terry, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

■ This is ostensibly "a petition for the peremptory writ of mandamus and injunctive relief * * *". The petitioner Mr. Smith made affidavit that he is unable to pay the costs hereof or to give security therefor and stated his belief that he is entitled to redress. He therefore is AUTHORIZED to commence and prosecute this proceeding without prepayment of fees and costs or giving security therefor. 28 U.S.C. § 1915(a).

■ The petitioner claims that he applied to the Criminal Court of Greene County, Tennessee November 14, 1975 for post-conviction relief without any action's having been taken thereon, and that he sought of the Tennessee Supreme Court a writ of mandamus to require the lower court to act without any action's having been taken thereon by the latter Court. He claims accordingly that he is being deprived of his federal rights to due process and the equal protection of the law, Constitution, Fourteenth Amendment, and prays that this Court will issue a writ of mandamus to the Criminal Court of Greene County, Tennessee, requiring it to act upon his aforementioned application. The writ of mandamus does not exist in federal practice. Rule 81(b), Federal Rules of Civil Procedure. " * * * [A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). " * * * Writs in the nature of mandamus are to compel an *administrative* officer to do a nondiscretionary *administrative* act [emphases supplied]. * * * " *Finley v. Chandler,* C.A. 9th (1967), 377 F.2d 548[3], certiorari denied (1967), 389 U.S. 869, 88 S.Ct. 146, 19 L.Ed.2d 147. Thus, this Court lacks authority to issue the writ of mandamus or a mandatory injunction to the aforenamed state court.

■ However, under certain circumstances, this Court could treat the petitioner's application for mandamus or injunctive relief as an application for the federal writ of habeas corpus. *Eaton v. Ciccone,* D.C.Mo. (1966), 283 F.Supp. 75, 76[1]. " * * * [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court * * * on the ground that he is in custody in violation of the Constitution or laws * * * of the United States." 28 U.S.C. § 2254(a). " * * * An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears * * * ", *inter alia,* " * * * that there is * * * the existence of circumstances rendering * * * [available state corrective] * * * process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b).

The petitioner hereby is ALLOWED 30 days herefrom in which to amend his petition, so as to apply to this Court for the federal writ of habeas corpus if the factual situation he claims involves a federal constitutional issue, and circumstances continue to exist rendering process under the Tennessee Post-Conviction Procedure Act, T.C.A. §§ 40–3801, et seq., or the Tennessee Habeas Corpus Act, T.C.A. § 23–1811, ineffective to protect his rights as a prisoner. Upon the failure of the petitioner to so

amend within such time, he will thereafter be DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure.

## ON AMENDED APPLICATION

The Court treats the amended application of the petitioner Mr. Smith for a writ of mandamus and injunctive relief as an application for the federal writ of habeas corpus. See memorandum opinion and order herein of May 21, 1976. He claims he is in the custody of the respondent pursuant to the judgment in 1970 of the Criminal Court of Greene County, Tennessee in violation of the Constitution, Fourth, Fifth, Sixth and Fourteenth Amendments. 28 U.S.C. § 2254(a).* He claims also the existence of circumstances rendering the corrective process of the state of Tennessee ineffective to protect his rights as a prisoner. 28 U.S.C. § 2254(b).

It not appearing from such application that Mr. Smith is not entitled to the federal writ of habeas corpus, the respondent will make a return, certifying the true cause of the applicant's detention, and showing any cause why such writ should not be granted within 43 days herefrom. 28 U.S.C. § 2243; Rule 81(a)(2), Federal Rules of Civil Procedure. The current movement of mail by the postal service provides good cause for the allowance of the additional 40 days.

## ON MERITS OF APPLICATION

This *pro se* action was instituted initially by the petitioner Mr. Smith as an application to a federal court for a writ of mandamus, to compel a state hearing judge to act judicially upon Mr. Smith's application to that court for post-conviction relief. The Court determined to treat such application as one for the federal writ of habeas corpus. See memorandum opinion and order herein of June 7, 1976. The respondent, in answer

to a show-cause order, undertook to demonstrate that Mr. Smith has not exhausted his available remedies under Tennessee law in Tennessee courts as to the matters he seeks to present to this Court. 28 U.S.C. §§ 2254(b), (c).

The applicant claims that he was compelled to undergo in the absence of counsel an overly suggestive in-custody pretrial identification by the alleged victim of his rape. It is represented by the respondent that this same issue was presented to the Criminal Court of Greene County, Tennessee in 1975 by Mr. Smith and " * * * that action had been taken, and that no appeal of that action has been sought by * * * " Mr. Smith. The "action taken" judicially by such state hearing court on January 12, 1976 in *William Bobby Smith v. State of Tennessee*, no. 4236 in the Criminal Court of Greene County, Tennessee, was succinctly stated, as follows: "Post Conviction is dismissed, premature."

■ However that may be, this Court discovered *sua sponte* that the issue Mr. Smith seeks to present to this Court herein was adjudicated in the opinion of Honorable William S. Russell, judge of the Court of Criminal Appeals of Tennessee, as follows:

\*  \*  \*  \*  \*  \*

The following error is assigned:

" * * * The Court erred in permitting [the victim] Viola Wills to testify that the defendant [applicant here] was the man who molested her. Identification of the defendant was made at the time when said defendant was brought to her room in the hospital handcuffed in the custody of the [s]heriff of Greene County and a member of the Tennessee [b]ureau of [i]nvestigation. This method of identification was unconstitutional and it likewise [sic] an

---

* The applicant appears to claim, *inter alia,* that he was compelled to undergo in the absence of counsel an overly suggestive in-custody pretrial identification by the alleged victim of his crime of rape, citing *United States v. Wade* (1967), 388 U.S. 218, 229–239, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1159–1164[10], [11], [12, 13], and *Chapman v. United States* (1967), 386 U.S. 18,

87 S.Ct. 824, 17 L.Ed.2d 705, rehearing denied (1967), 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241. This Court understands *Chapman* to relate to prosecutorial comment on a criminal defendant's failure to testify. The applicant may have intended to cite *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

error for the Court to permit * * * Sheriff Willie Wilson and James Waldrop, TBI investigator, to testify that Viola Wills identified the defendant as her assailant in their presence in the hospital room of the said Viola Wills."

There are many reasons why this assignment is without merit. First, the in-court identification of the defendants by the victim as the man who assaulted her was not objected to. Secondly, the in-court identification was apparently based upon what the witness observed at the time of the crime, and was entered into the record upon that implicit premise. (Throughout her description of the crime, the witness constantly related what the defendant did, not just what her attacker did.) Thirdly, the identification at the hospital was not mentioned upon her direct examination, but was brought out on cross-examination. Fourthly, an in-court identification was plainly solicited upon cross-examination, in this language:

"Q. And when you got to the porch or got to the door, who did you see?

"A. Well, I saw that man there. Of course, I didn't know him."

Further cross-examination of the victim regarding the hospital show-up reflects clearly and without question that she remembered the defendant from the crime, and that her present identification was so founded and not upon the hospital identification. (The defendant was brought before her only after she had picked his picture from several photographs shown to her by officers.) We quote from a part of the cross-examination:

"Q. At that time you didn't know who the man was?

"A. No, I didn't. I didn't know who he was even when they brought him into the hospital for me to identify. They told me his name, but I recognized the face.

"Q. You recognized the face?

"A. Yes.

"Q. And was the man handcuffed when they brought him in? Was he the only man that was brought in, or did they bring in 2, 3, or 4 men with him?

"A. Well, they [sic] was just three of them: Smith, the [s]heriff and Mr. Waldrop.

"Q. Of course, there was no problem about knowing it was Bobby when they brought him in handcuffed, that he was the man that was accused of having molested and assaulted you?

"A. Well, he just looked to [sic] natural.

"Q. Well, at the time, Miss Wills, all of this was going on in a comparatively dark room, wasn't it?

"A. It wasn't dark: it was light enough in there [sic] I could see him.

"Q. There was nothing but this, you say,—but this one 15-watt bulb over your bed?

"A. Well, you could see alright.

"Q. You could see the outline of a person but—

"A. You could see in the face and him right up over you."

Agent Waldrop testified on direct examination, without objection that the victim had picked Smith's photograph out of 8 photographs. We do not note that he testified that the victim identified Smith in the hospital show-up. We fail to find that [s]heriff Wilson testified about either out-of-court identification, as alleged in the assignment of error.

The root question of the legality of the show-up is simply not before us in this record. It was not timely raised and litigated upon the trial. It seems rather clear that no prejudice resulted to Smith from the procedure followed. We further observe that regardless of an out-of-court identification, an in-court identification is competent and may be introduced in evidence on a showing that it has an independent origin. * * *

*William Bobby Smith, plaintiff-in-error, v. State of Tennessee, defendant-in-error,* no. 49, Greene County, in the Court of Criminal Appeals of Tennessee, opinion of October

14, 1971, certiorari denied. Although Judge Russell proceeded in his opinion on the premise that this issue was not properly presented on the trial, permitting review on appeal, it is patent that the Tennessee appellate court did consider the question presented and concluded that no prejudice resulted to Mr. Smith from the out-of-court identification procedure. Thus it is that, as to this issue [1] presented to this Court, Mr. Smith has exhausted his available state remedies. 28 U.S.C. § 2254(b).

██ This Court concurs with Judge Russell that the record of Mr. Smith's criminal trial reflected that his victim's in-court identification of him was based clearly upon her observations of him at the time of the crime rather than her identification of him at the hospital, and thus that the victim's in-court identification of Mr. Smith was not a fruit of her pretrial identification of, first, his photograph, and subsequently of his person. These distinctions in the factual context were recognized by the Supreme Court in *United States v. Wade* (1967), 388 U.S. 218, 235, 240, 242, 87 S.Ct. 1926, 1936[11], 1939[14], 1940[16], 18 L.Ed.2d 1149. There was no substantial prejudice to the applicant's rights in the confrontation with his victim at the hospital. *Cf. ibid.,* 388 U.S. at

227, 87 S.Ct. 1932[8]. On the facts of this particular confrontation, the applicant was not denied due process of law in violation of the Constitution, Fourteenth Amendment. *Cf. Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, (where a state criminal defendant had been brought to a hospital room for the purpose of identification by his victim).

██ There remains the question, whether Mr. Smith was denied his right to the assistance of counsel, Constitution, Sixth Amendment, in the hospital confrontation. Assuming *arguendo* that he was, it is the belief of this Court that such federal constitutional error was harmless beyond a reasonable doubt.[2] *Chapman v. State of California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828[5], 17 L.Ed.2d 705, rehearing denied (1967), 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241. The victim had an excellent opportunity to observe Mr. Smith at the time of the crime. She seems to have had etched in her mind a mental picture of him. When she was shown a group of photographs, including one of Mr. Smith, she recognized him forthwith therefrom; and when Mr. Smith was ushered into her presence at the hospital, she stated immediately

---

1. As to the applicant's additional claims of his warrantless arrest, the delay in bringing him before a state judicial officer, and his being " * * * compelled to give blood * * * ", he does not appear to have exhausted his available state remedies, 28 U.S.C. § 2254(b). Further: the guilt of Mr. Smith has now been determined by jury verdict after his indictment by a grand jury, and he may not assert the sole ground of a warrantless arrest to void his conviction. *Ker v. Illinois* (1886), 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; *Gerstein v. Pugh* (1975), 420 U.S. 103, 95 S.Ct. 854, 865–866[22], 43 L.Ed.2d 54. Neither may his conviction be vacated on the ground that he was detained pending trial without being carried before a judicial officer for a determination of probable cause. *Ibid.,* 95 S.Ct. at 865[23]. Compelling Mr. Smith to submit to a withdrawal of his blood for analysis did not "compel" him to testify against himself or otherwise provide the state of Tennessee with evidence of a testimonial or communicative nature. *Schmerber v. State of California* (1966), 384 U.S. 757, 761, 86 S.Ct. 1826, 1830[3], 16 L.Ed.2d 908, cited and quoted from in *United States v. Wade, infra,* 388 U.S. at 221, 87 S.Ct. at 1929.

2. The indirect evidence against Mr. Smith was overwhelming: In addition to the victim's positive and unequivocal direct identification of him based on her observations of him at the time of a brutal and demeaning assault, Mr. Smith had inquired earlier whether his victim lived alone. He was shown to have stated his intention earlier on the evening of the crime to gain sexual satisfaction that night. He was taken by automobile and let out near the victim's home near the midnight hour. A variety of beer which he was shown to have been carrying when he was let out of the automobile was found just inside the victim's front gate. An empty package of cigarettes of the same brand Mr. Smith had purchased shortly before his leaving the automobile was found in his victim's residence. Mr. Smith was apprehended near his victim's home the day after his crime. He was then wearing a shirt with a pocket missing from it; the missing pocket was shown to have been located afterward in the victim's home.

that she recognized him as her assailant. From all this, it is patent that Mr. Smith's conviction was the fruit of Ms. Wills' positive identification of him in court as the culprit who committed this vicious crime upon her person and bore no relation whatever to Mr. Smith's being denied his right to the assistance of counsel at his confrontation with Ms. Wills in the hospital room.

Accordingly, the applicant Mr. Smith hereby is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure. If he gives timely notice of an appeal from the judgment to be entered herein, he is authorized to proceed on appeal in forma pauperis. Rule 24(a), Federal Rules of Appellate Procedure. Any such notice will be treated also as an application for a certificate of probable cause which, in that event, will ISSUE, Rule 22(b), Federal Rules of Appellate Procedure, because of the subjective nature of this Court's finding that the constitutional error mentioned was harmless beyond a reasonable doubt.