[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15154
Non-Argument Calendar

_____

D. C. Docket No. 05-20893-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC GARDINER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 29, 2008)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Eric Gardiner appeals his convictions for conspiracy to import cocaine, 21

U.S.C. §§ 952(a), 963, and conspiracy to commit money laundering, 18 U.S.C. § 1956(a)(1)(B)(i)-(ii), (h).  Gardiner argues that the district court should have dismissed his indictment because the government allegedly circumvented an extradition treaty between the United States and the Dominican Republic.  We affirm.

## I. BACKGROUND

Gardiner, a Bahamian national who was under investigation by the Drug Enforcement Administration for his distribution of narcotics, entered the Dominican Republic using a false passport.  The use of a false passport violated the laws of the Dominican Republic, but Gardiner was allowed to enter the country based on coordination between drug enforcement officials in that country and the United States.  When he learned of Gardiner's location, Special Agent Manuel Recio of the United States spoke with Colonel Pablo Jimenez Sanchez of the Dominican Republic about obtaining custody of Gardiner.

Eleven days after Gardiner entered the Dominican Republic, a grand jury in the Southern District of Florida returned an indictment that charged Gardiner with 23 separate offenses related to the drug conspiracy.  Agent Recio contacted Interpol to address extradition procedures, but he did not discuss the extradition treaty between the United States and the Dominican Republic.  Interpol explained

2

to the agent that each country had its own rules governing extradition.

The Drug Enforcement Administration did not intend to rely on extradition procedures. According to its agents, the Dominican Republic could expel any non-citizen so long as the United State had a valid arrest warrant. Agent Recio submitted a "red notice application" to Interpol that included a "Prosecutor's Agreement to Extradite." In the agreement, a federal prosecutor agreed to provide additional information to the Office of International Affairs of the United States if the federal government wanted a cooperating country provisionally to arrest Gardiner pending extradition proceedings; draft an extradition request; and notify the Office if the prosecutor no longer sought extradition.

Interpol issued a "diffusion notice" that alerted other countries that the United States had issued a warrant for Gardiner's arrest. The diffusion notice stated that the United States would "if possible, formally request provisional arrest with a view toward extradition in accordance with any applicable extradition treaty[.]" The diffusion notice also requested that a country give the United States notice "[i]f, in lieu of extradition, [foreign] authorities can exclude, expel, deport, or otherwise remove" Gardiner.

After receipt of the diffusion notice, Colonel Sanchez received permission from the Dominican National Director for Drug Control to expel Gardiner, placed

Gardiner under arrest, and made arrangements to transfer Gardiner to federal agents. Two days later, federal agents took custody of Gardiner at the Santo Domingo airport. The arrest was described by the Dominican authorities as the product of a successful joint operation with the United States that ended in the expulsion of an international drug trafficker.

Gardiner moved to dismiss his indictment. Gardiner argued that, when it employed Interpol procedures for his arrest, the federal government invoked the extradition treaty between the United States and the Dominican Republic, and he was entitled to a hearing in a foreign court before his extradition. In an evidentiary hearing, Agent Recio testified that Colonel Sanchez arrested Gardiner based on the diffusion notice and did not receive a copy of the Prosecutor's Agreement. Recio explained that Colonel Sanchez believed he could not extradite Gardiner because the Dominican Republic would not consider extradition of a noncitizen.

The district court denied Gardiner's motion to dismiss. Gardiner reserved the right to appeal the decision and pleaded guilty to conspiracy to import cocaine and conspiracy to commit money laundering. The district court sentenced Gardiner to two concurrent terms of 220 months of imprisonment and concurrent terms of five and three years of supervised release.

## II. STANDARD OF REVIEW

We review the denial of a motion to dismiss the indictment for abuse of discretion and we examine related questions of law de novo. United States v. Noriega, 117 F.3d 1206, 1211 (11th Cir. 1997).

## III. DISCUSSION

Gardiner argues, based on the commencement of Interpol extradition procedures and the language contained in the Prosecutor's Agreement and the diffusion notice, that his removal from the Dominican Republic constituted a de facto extradition. Gardiner argues that the government was required to comply with the extradition treaty between the United States and the Dominican Republic, and the failure of the government to grant Gardiner an evidentiary hearing before extradition entitles him to a dismissal of all charges and release. We disagree.

An extradition treaty often is not the exclusive method by which the United States can obtain custody of a foreign citizen. A treaty serves to "provide[] a mechanism which would not otherwise exist, requiring, under certain circumstances, the [signatory countries] to extradite individuals to the other country, and establish[es] the procedures to be followed when the Treaty is invoked." United States v. Alvarez-Machain, 504 U.S. 668, 664–65, 112 S. Ct. 2188, 2194 (1992). For extradition to be the sole method of transfer, the treaty

5

must expressly prohibit any other method.  Id. at 666–69, 112 S. Ct. at 2194–96;

Noriega, 117 F.3d at 1213.  Absent an express prohibition, even if a formal

extradition has been initiated, a government may obtain custody of a defendant by

other methods, including abduction, expulsion, or surrender by the host country.

Ker v. Illinois, 119 U.S. 436, 438, 442–43, 7 S. Ct. 225, 226, 228–29 (1886).

The district court did not err when it denied Gardiner's motion to dismiss the

indictment.  Gardiner had to establish "by reference to the express language of a

treaty . . . that the United States affirmatively agreed not to seize foreign nationals

from the territory of its treaty partner."  Noriega, 117 F.3d at 1213.  Gardiner failed

to establish that the treaty prohibited methods other than extradition to obtain

custody, and the method by which Gardiner was brought into the United States did

not deprive the district court of jurisdiction over Gardiner's criminal charges.

The denial of Gardiner's motion to dismiss the indictment is **AFFIRMED.**