Joseph R Corso, J.
The defendant moves to dismiss the *566 indictment on the ground that any conviction would be jurisdictionally defective because the defendant, who is a Federal prisoner, has been presented to the court in violation of his constitutional rights under the Interstate Agreement on Detainers (codified in New York as CPL 580.20).
The preliminary facts are not in dispute. On November 27, 1973, the defendant was arrested by the Federal authorities and was subsequently sentenced to a term of imprisonment in the Federal Reformatory in Petersburg, Virginia. While he was incarcerated in that institution, the Grand Jury of Kings County voted two indictments on February 6, 1974, numbered 253/1974 and 611/1974, both of which indictments accused him of having committed drug offenses. The crime in indictment 253/1974 was alleged to have been committed on August 8, 1973 and the crimes stated in indictment number 611/1974 were alleged to have been committed on October 4, 1973.
In October, 1974, the New York Police Department filed a detainer warrant at the Petersburg Reformatory. The warrant which was filed there referred only to indictment number 253/1974.
On May 16, 1975, the District Attorney of Kings County requested the warden of the Federal prison to give Kings County temporary custody of the defendant in order that Kings County could try him for the drug offenses contained in indictment number 253/1974.
The Federal warden in Petersburg, Virginia, granted the District Attorney’s request and made a formal offer to deliver temporary custody by a document dated June 6, 1975.
On or about July 31, 1975, the Federal Marshals delivered the defendant to Kings County authorities to facilitate the defendant’s prosecution under indictment number 253/1974.
On August 11, 1975 the defendant was arraigned in this court on both indictments: to wit, 253/1974 and 611/1974.
It is defendant’s argument that he was brought into this State under the Interstate Agreement on Detainers with the allegation in the papers that he was to be prosecuted under indictment number 253/1974 and now that he is in New York, finds himself being prosecuted under indictment number 611/ 1974. It is his argument that (a) it was necessary that he be extradited under CPL 570.12 and the United States Constitution, or (b) that if he was brought back pursuant to the Interstate Agreement, it had to be solely on the basis of a *567 prosecution under indictment number 253/1974, which was the indictment specified in the papers.
The District Attorney disputes the manner in which the defendant was brought back and gives a different version. The District Attorney states that the original request to bring the defendant to this State was made under the Interstate Agreement which did specify indictment number 253/1974. However, he states that defendant was not brought back under the agreement, but that he waived extradition. The District Attorney attaches to his answering affirmation a document in which the defendant states that he has been fully advised of his rights and waives extradition.
In the view of this court, it makes no difference whether the defendant was returned to this State by virtue of the Interstate Agreement or a waiver of extradition. We are not dealing here with the return of a prisoner from this State to another State. The question is not one of jurisdiction over subject matter. The issue here involves jurisdiction of the person of the defendant.
This court has jurisdiction over the defendant by reason of his physical presence here. It has long been the rule that once a defendant is physically before the court, irrespective of how he is brought there, the court obtains jurisdiction of the person (Ker v Illinois, 119 US 436; Frisbie v Collins, 342 US 519). The rule has rested on the basis that due process was limited to the guarantee of a constitutionally fair trial. A statement of the rule is set forth in the American Law Reports (165 ALR 947, 948) as follows: "It is virtually a universal rule of law that where a person accused of a crime is found within the territorial jurisdiction wherein he is so charged, and is held under process legally issued from a court of that jurisdiction, neither the jurisdiction of the court nor the right to put him on trial for the offense charged is impaired by the manner in which he was brought from another jurisdiction, whether by kidnapping, illegal arrest, abduction, or irregular extradition proceedings.”
Further, it is stated (p 958): "that the right to try an accused held under legal process is not impaired by the fact that he was kidnapped or otherwise illegally seized in another state or foreign country, and abducted into or forced to return to the jurisdiction to answer the criminal charge against him.”
In New York the rule was stated in People ex rel. Kurzyn *568 ski v Hunt (257 App Div 1032): "The means employed to return the relator to this State do not relate to the restraint from which he seeks to be relieved. Hence his return to this State, even if unlawful, does not make his imprisonment illegal. (People v. Dileo, 194 App. Div. 793, 794, and cases cited; Pettibone v. Nichols, 203 U. S. 1, 92).”
United States v Toscanino (500 F2d 267) is distinguishable from the rule stated in Ker and Frisbie which involved State court convictions, and the Toscanino court said those cases were not controlling because Toscanino involved an appeal from a judgment of a Federal District Court over which the Appellate Court has supervisory power. Further, in Toscanino, defendant made serious charges of pretrial misconduct by agents of our Government in obtaining jurisdiction over him. He claimed that he had been lured from his home in Uruguay, abducted by being knocked unconscious with a gun, and thrown into a car, taken to the Brazilian border and that electronic surveillance was used. While in custody of the Brazilians, he was tortured in various ways, such as interrogation for 17 days and deprived of food and sleep for days at a time. He also claimed that he was kicked and beaten, forced to walk up and down a hallway for seven and eight hours at a time, his fingers were pinched with metal pliers and alcohol was flushed into his eyes and nose. Finally, Brazilian-American agents put him on a Pan Am plane, arrested him on the plane and he woke in the United States. The Government prosecutor neither affirmed nor denied these allegations, but contended they were immaterial. The court reversed the judgment on the ground that if the allegations weré true, jurisdiction had been secured by fraud. The lower court was directed to hold an evidentiary hearing only if defendant submitted credible supporting evidence of his abduction, including evidence that the action was taken by direction of United States officials. If such evidence was not produced, the court could decline to hold a hearing.
In the subsequent case of United States ex rel. Lujan v Gengler (510 F2d 62, cert den 421 US 1001), the same court made clear that Toscanino no longer provided carte blanche to the Government to bring defendants to the United States from abroad by the use of torture, brutality or similar outrageous conduct, but that it did not intend "to suggest that any irregularity in the circumstances of a defendant’s arrival in the jurisdiction would vitiate the proceedings *569 of the criminal court.” It made clear that it did not mean "to eviscerate the Ker-Frisbie rule which the Supreme Court has never felt impelled to disavow” (p 65).
It is not alleged in this case that defendant was abducted, kidnapped, coerced, beaten or forced to return to New York, nor is it claimed that the indictment which was the basis for his return was a fictitious one. The fact is that there were two indictments actually pending against this defendant. Absent a set of facts like that in Toscanino, the manner in which his return to New York was accomplished is of no consequence. Since he is here, the court has jurisdiction over his person.
Accordingly, the motion is denied.