(April 24, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. ARIEL B. ORTIZ, on Behalf of RICHARD WARREN, Respondent, v WARDEN, Appellant.—Judgment of the Supreme Court, New York County (Luis Neco, J.), entered on or about January 7, 1986, treating Richard Warren's application as a petition for a writ of habeas corpus, granting such petition, and directing his release from New York custody and his return to the custody of the New Jersey State Department of Corrections, is unani-

mously reversed, on the law, without costs, and the petition dismissed.

Richard Warren is charged in New York County indictment No. 8520/83, filed on December 30, 1983, with one count of burglary in the third degree and one count of criminal possession of stolen property in the first degree. After being released on bail, Warren subsequently failed to appear and a bench warrant was issued for his arrest. Thereafter, the State of New York started efforts to return him from New Jersey, where he was incarcerated, to New York in order to face the charges contained in the indictment. The initial request, made pursuant to the Interstate Agreement on Detainers (CPL 580.20), was rejected by New Jersey since no detainer was received. In August of 1985, all of the proper papers were sent to the New Jersey authorities at Southern State Correction Facility. The New York authorities, however, did not mail a copy of the request for temporary custody directly to Warren and the records at Southern State do not indicate whether that institution advised defendant of New York's request for custody.

On September 11, 1985, the New Jersey authorities peacefully surrendered Warren into the custody of New York City police officers, as agents for the State of New York, and he was brought before the Supreme Court and ordered held without bail pending the disposition of the indictment.

Thereafter, Warren made an oral application for an order directing his release from New York custody and his return to the custody of the State of New Jersey. He claimed that his detention in New York was unlawful since his presence in the jurisdiction had been secured improperly through the Interstate Agreement on Detainers, in that he had not been notified of New York's request for his temporary custody as required by CPL 580.20 (IX) (7) and that, consequently, he had been deprived of an opportunity to challenge the request pursuant to CPL 580.20 (V) (a).

Finding that the People had failed to provide defendant with a copy of the request for temporary custody, Criminal Term concluded that defendant had been deprived of his right to contest in New Jersey's courts the legality of his delivery to New York, treated Warren's application as a petition for a writ of habeas corpus, granted the petition and directed that Warren be returned to the custody of the State of New Jersey. This result was in error and we reverse to dismiss the petition.

Assuming, arguendo, that relator was deprived of rights under the Interstate Agreement on Detainers, the Supreme Court still had jurisdiction over him by virtue of his physical presence before the court. A criminal defendant, physically present before a court in which charges against him are pending, is subject to the jurisdiction of that court, notwithstanding the lawfulness of the means used to obtain his presence. *(Ker v Illinois,* 119 US 436; *Frisbie v Collins,* 342 US 519.)*

The *Ker-Frisbie* doctrine, as this rule is known, has been recognized and accepted in virtually every jurisdiction, including New York. *See, People v Walls* (35 NY2d 419) in which the Court of Appeals rejected a challenge to a criminal conviction where New York City police officers had pursued defendants into New Jersey, apprehended them and returned them to New York, without formal extradition proceedings and without bringing them before a magistrate, as required by New Jersey law.

Even assuming there was a formal good-faith requirement for the exercise of personal jurisdiction, that requirement was met here. It is clear from the record that an inadvertent mistake was made in the distribution of the relevant forms. Thus, New York's failure to notify Warren of the request for his temporary custody was a good-faith error. Moreover, the statute places the burden of notifying the inmate on the State receiving the request, which in this case was New Jersey (CPL 580.20 [IX] [7]). If the officials of that State did not give notice to defendant, that omission should not be held against the People of the State of New York.

The purpose of the Agreement on Detainers is to encourage the expeditious and orderly disposition of outstanding, out-of-State charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints (CPL 580.20 [I]).

Contrary to Criminal Term's holding that article 580 must be "construed strictly", by it own terms it "shall be liberally construed so as to effectuate its purposes" (CPL 580.20 [IX] [1]). The purpose of the agreement certainly will not be served by returning Warren to New Jersey to only prolong and further delay a disposition.

Finally, Warren argued at Criminal Term that, had he been given notice, he could have challenged the legality of his delivery. Yet, he was unable to give any basis for such a challenge. In light of his inability in the Supreme Court to

articulate a basis for such a challenge, he was clearly not prejudiced by the omission. Concur—Murphy, P. J., Ross, Asch, Rosenberger and Wallach, JJ.