OPINION OF THE COURT
Raymond E. Cornelius, J.
On the early morning of Sunday, January 26, 1992, the defendant, Thang Thanh Nguyen, along with several other individuals, were allegedly involved in a home invasion in a suburb of Rochester, New York. The victim was a local restaurateur, Chung Lam, who, together with his wife and other members of the family, were present inside of the residence. During the course of this incident, Chung Lam was shot and killed with a handgun, and his wife, Thu Lam, as well as one of the intruders, sustained injury by also being shot with a gun.
The two persons who are claimed to have accompanied the defendant on the morning of January 26, 1992 were subsequently arrested and convicted of various offenses in connection with the incident. However, the defendant purportedly fled the jurisdiction and returned to the Socialist Republic of Vietnam. Evidence was presented to a Grand Jury on June 29 and July 8, 1992, and this resulted in a sealed indictment, dated July 9, 1992, charging the defendant with two counts of murder in the second degree, one count of attempt to commit the crime of murder in the second degree, two counts of burglary in the first degree, and six counts of robbery in the first degree. On that same date, and based thereon, a superior court warrant was issued, by the Monroe County Court, for the arrest of the defendant. Such warrant, of course, may be executed anywhere within the State of New York. (CPL 210.10 [3].) On January 8, 1998, approximately six years after the return of the indictment and issuance of the superior court warrant, the defendant appeared before this court for arraignment on the indictment, and has been continuously held in custody since that time.
The omnibus motion, filed pursuant to CPL 255.20, includes an application for dismissal of the indictment upon grounds *18 that the court lacks jurisdiction over the person of the defendant, and that there has been a violation of his due process rights under both the United States and New York State Constitutions. More specifically, in an affidavit submitted in support of the motion, counsel for the defendant has asserted that, on December 22, 1997, his client was taken into the physical custody of the Vietnamese military police. Although the United States does not have any extradition treaty with the Socialist Republic of Vietnam, counsel contends that the defendant was taken into custody at the request of American governmental officials, located at the United States Embassy in Bangkok, Thailand, and thereafter, on January 5, 1998, was turned over to representatives of the United States Government.* Indeed, discovery material, submitted by the People, confirms that on January 5, 1998, members of the Federal Bureau of Investigation received custody of the defendant at the Don Muang Airport in Bangkok, Thailand, from representatives of the Vietnamese government. A Federal Bureau of Investigation (FBI) report discloses that the defendant was advised that he was not under arrest, “inasmuch as FBI Special Agents do not have arrest authority in Thailand”, but was further told that he would remain in FBI custody during an air flight back to the United States. It appears that, after a stopover in Tokyo, Japan, the defendant arrived at John F. Kennedy Airport in New York City, where he was placed under arrest by local police officers.
The People have served a notice, pursuant to CPL 710.30, of an intention to use incriminating statements allegedly made by the defendant to police in Vietnam on December 23, 1997. In this connection, counsel, again, as part of the omnibus motion, has made a motion to suppress such evidence pursuant to CPL 710.60. In the affidavit submitted by counsel, claims are made that, on that date, the defendant was held against his will and with threats to his life, and after refusal of any right to contact his family, an attorney, or to be taken before a judicial tribunal, was forced to give a statement concerning the subject matter of the indictment.
First, there is no dispute that the statements, allegedly made to members of the Vietnamese military police, occurred *19 subsequent to the indictment and issuance of the superior court warrant. In People v Settles (46 NY2d 154 [1978]), the Court of Appeals ruled that the right to counsel indelibly attached upon filing of an indictment, and there could not be a knowing and intelligent waiver of such right without the actual presence of an attorney. In that case, which involved a motion to suppress identifications made by witnesses at a postindictment, prearraignment corporeal viewing of the defendant, the Court emphasized the distinction between the accusatory stage of the proceeding, which commences upon the return of an indictment by a Grand Jury, and the investigative stage. In People v Samuels (49 NY2d 218 [1980]), the Court ruled that a statement should be suppressed as evidence because the filing of a felony complaint, like the filing of an indictment, commences a criminal proceeding, and, therefore, a defendant may not waive the right to counsel in the absence of an attorney.
On first impression, it would, therefore, appear that the statement concerning the homicide, allegedly made to members of the Vietnamese military police on December 23,1997, should be suppressed as evidence because the defendant, as a matter of law, could not waive his right" to counsel without the actual presence of an attorney. As aforementioned, there is no dispute concerning the sequence of events in this case, and in this regard CPL 710.60 (2) (a) provides that a court must summarily grant a motion to suppress if “[t]he motion papers comply with the requirements of subdivision one and the people concede the truth of allegations of fact therein which support the motion”.
There is precedent which holds that the commencement of a proceeding, or other significant judicial activity, in Federal court does not preclude a waiver of rights, made to State law enforcement officials, in connection with prospective State criminal charges. (See, e.g., People v Ridgeway, 101 AD2d 555 [4th Dept 1984], affd 64 NY2d 952 [1985].) The pending case presents the somewhat reverse situation, namely, a statement from a person, who has been taken into custody at the request of representatives of the Federal Government, and sought to be used in a State court criminal action. This court believes that the Settles-Samuels doctrine should, nevertheless, be held applicable and any such statement should be suppressed if the Federal action is directly related to the commencement of the State criminal action. In the pending case, whether the Federal Bureau of Investigation and/or Department of State initiated the actions taken by the Vietnamese government, with or *20 without a Federal process, such as a fugitive warrant, the fact remains that such action was undertaken in order to return the defendant to the United States for the purpose of the State criminal indictment.
In regard to the motion to dismiss the indictment, the Supreme Court of the United States has consistently adhered to the view that a court may continue to exercise jurisdiction over a defendant, notwithstanding the means employed to bring that individual within the court’s jurisdiction, and that due process of law is satisfied when the defendant has been convicted after a fair trial. (See, e.g., United States v AlvarezMachain, 504 US 655 [1992].) This has sometimes been referred to as the Ker-Frisbie doctrine, named for two earlier Supreme Court decisions. (See, Ker v Illinois, 119 US 436 [1886]; Frisbie v Collins, 342 US 519 [1952], reh denied 343 US 937 [1952].) One exception to this rule would be the return of an individual in violation of a treaty between the two countries. (United States v Rauscher, 119 US 407 [1886].)
Most, if not all, of the New York authority in this area relates to defendants who claim to have been brought unlawfully from another State into this State for purposes of criminal prosecution. These decisions have uniformly relied upon the Federal constitutional principles embraced in the Ker-Frisbie doctrine and hold that a court of this State is not precluded from exercising jurisdiction over persons wrongfully brought to New York by its law enforcement officers. (See, People v Walls, 35 NY2d 419 [1974], cert denied sub nom. Junco v New York, 421 US 951 [1975]; People ex rel. Ortiz v Warden, 119 AD2d 526 [1st Dept 1986]; People ex rel. Kurzynski v Hunt, 257 App Div 1032 [4th Dept 1939]; People v Pagan, 84 Misc 2d 565 [1975]; People ex rel. Hein v Ramsden, 36 Misc 2d 345 [1962].) There is also language, contained in several of these decisions, especially relating to habeas corpus proceedings, suggesting that an important distinction should be drawn between the means by which a person is brought into this State to face criminal charges and the person’s actual physical presence before the court. For example, in People ex rel. Kurzynski v Hunt (supra) the Court stated that “[t]he means employed to return the relator to this State do not relate to the restraint from which he seeks to be relieved”, and that “his return to this State, even if unlawful, does not make his imprisonment illegal.” Thus, in the pending case, if the defendant had sought a writ of habeas corpus pursuant to CPLR article 70, this court would have been inclined to dismiss the proceeding because of *21 the fact that he is currently being lawfully detained based upon the indictment, superior court warrant and this court’s decision to remand pending trial.
In regard to the constitutional issues, the defendant’s motion to dismiss should be denied, insofar as based upon Federal due process considerations. Nevertheless, this court would further agree that the defendant’s due process rights, under the New York State Constitution, may not necessarily be the same as under the United States Constitution, and in an appropriate case, the means employed to produce someone before the courts of this State may constitute a violation of the former. In People v Isaacson (44 NY2d 511 [1978], rearg denied 45 NY2d 776 [1978]), for example, the Court of Appeals expressly recognized that higher standards may be imposed under the State Due Process Clause (NY Const, art I, § 6) than under corresponding Federal constitutional provisions. In that case, the Court dismissed an indictment because of egregious policeman’s conduct, including the means employed to induce the defendant to come into New York State and his subsequent arrest. Indeed, even under the Federal Due Process Clause, there may be situations under which a court should decline to exercise jurisdiction because of the means by which the defendant was brought into the State. In People v Walls (supra, at 424), the Court stated that: “In a proper case this State may decline to exercise its jurisdiction, rather than exploit the fruits of unauthorized conduct” (citing, in part, Ker v Illinois, supra; also see, United States v Toscanino, 500 F2d 267 [2d Cir 1974], reh en banc denied 504 F2d 1380 [1974]; cf., United States ex rel. Lujan v Gengler, 510 F2d 62 [2d Cir 1975], cert denied 421 US 1001 [1975]).
The court has reviewed the papers, submitted on behalf of the defendant’s application for dismissal of the indictment, and has concluded that the allegations of misconduct do not rise to the level of a due process violation, under either the Federal or State Constitution. The defendant was subjected to custodial interrogation by the Vietnamese authorities, but as earlier determined, the use of such statements, as evidence, must be suppressed for the stated reasons.
Based upon the foregoing, it is hereby ordered that the motion to dismiss the indictment is hereby denied, and it is further ordered that the motion to suppress use of the statement, on the People’s direct case, is hereby granted.

 The April 13, 1998 edition of U.S. News & World Report made specific reference to the apprehension of the defendant, in the pending case, in conjunction with an article discussing Vietnam’s recent cooperation with the United States, in criminal cases, by “offering help on investigations and sending back fugitives, even though the two nations lack an extradition treaty.”