VICTOR MARRERO, United States District Judge.
Defendants Baktash Akasha Abdalla and Ibrahim Akasha Abdalla (collectively the "Akasha Brothers") move to compel the Government to produce documents related to their "extradition and/or expulsion from Kenya." (See"Motion," Dkt. No. 65.) The Akasha Brothers argue that the requested documents are material to their defense that they were forcibly kidnapped by agents of the United States government and that the Court therefore lacks jurisdiction over their prosecution. (See"Def. Mem. of Law," Dkt. No. 66.) Because the Akasha Brothers fail to show that the documents they seek from the Government could be material to any non-frivolous defense to their prosecution, the Motion is DENIED.
I. BACKGROUND
The Akasha Brothers, along with Gulam Hussein, Vijaygiri Anandgiri Goswami, and Muhammad Asif Hafeez (collectively, and together with the Akasha Brothers, "Defendants"), *789 are charged with orchestrating an international narcotics conspiracy based in Kenya, with a distribution network that included the United States. (See"Superseding Indictment," Dkt. No. 55.[1] )
The Akasha Brothers are citizens of Kenya and were arrested by Kenyan authorities in October 2014. (See Def. Mem. of Law at 5-6; Dkt. No. 66, Ex. B at 1-2.) After their arrest, the Kenyan government initiated extradition proceedings against the Akasha Brothers in the Chief Magistrate's Court at Mombasa ("Kenyan Magistrate Court") to determine whether the Akasha Brothers could be extradited to the United States to face prosecution in the instant case, as requested by the United States government. (See Dkt. No. 66, Ex. B at 5-6 and Ex. C.) The Kenyan government also requested that the Akasha Brothers be detained pending the resolution of the extradition proceedings. (See id., Ex. B at 41-43.)
In November 2014, the Kenyan Magistrate Court ordered that the Akasha Brothers could not be removed from Kenya without a prior order by a Kenyan court "to ensure that the rule of law prevails in this case." (Id., Ex. B at 35.) In December 2014, the Kenyan Magistrate Court ordered that the Akasha Brothers be released from detention once they satisfied various "strict bond terms that will ensure [their] attendance in court." (Id. at 50.)
On January 30, 2017, and again on January 31, 2017, the High Court of Kenya at Mombasa issued orders stating that the Akasha Brothers were in the custody of the "Inspector General of Police" and the "Director of Criminal Investigation" (collectively, "Kenyan Law Enforcement Agents"). (See Id., Exs. E and F.) The High Court of Kenya ordered the Kenyan Law Enforcement Agents to produce the Akasha Brothers "together with the original of any warrant or order for detention." (Id. ) The High Court of Kenya further ordered that the Kenyan Law Enforcement Agents were "hereby restrained and prohibited from removing the applicants out of the jurisdiction of this court." (Id. ) However, on January 31, 2017-the same day the High Court of Kenya issued the latter of the orders described above-the Akasha Brothers were in the custody of the United States government and were produced for their initial appearances in this Court. (See Dkt. Nos. 17 and 22.)
The Akasha Brothers assert that the confusion about their whereabouts is explained by the fact that the United States government "forcibly kidnap[ped]" them from Kenya and brought them to the Southern District of New York in January 2017. (Def. Mem. Of Law at 1-2.) To support this version of events, Ibrahim Akasha Abdalla submitted a sworn affidavit attesting that on or about January 28, 2017, he was sitting in his vehicle in Mombasa, Kenya when several armed individuals who "identified themselves as police" forced him into the backseat of his car, bound his hands, confiscated his two cellular telephones, and eventually transferred him to a second car and covered his head. (See"Affidavit," Dkt. No. 70, Ex. C.) Ibrahim Akasha Abdalla attests that he was then transferred to a "small, dark, very hot windowless room," where he was kept without food or water for approximately two days. (See id. ¶¶ 11, 14-15.) Ibrahim Akasha Abdalla attests that during those two days, men repeatedly interrogated him about the whereabouts of his brother, Baktash Akasha Abdalla, and when he denied any such knowledge, they beat him with *790 their hands and sticks, kicked him, and poured water on him. (See id. ¶ 12.) After approximately two days, Ibrahim Akasha Abdalla was transferred to the custody of agents of the United States Drug Enforcement Agency, who brought him to the Southern District of New York by airplane. (Id. ¶¶ 15-16.)
The Akasha Brothers move to compel the Government to produce any documents related to their extradition or expulsion from Kenya pursuant to Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"). (See Motion.) The Akasha Brothers argue that the requested documents will be material to a subsequent motion they intend to file to dismiss the Superseding Indictment. (See Def. Mem. of Law at 1-2.) The Superseding Indictment must ultimately be dismissed, the Akasha Brothers argue, because the Court lacks jurisdiction over their prosecution as a result of the Government's conduct in bringing them from Kenya to the United States. Specifically, the Akasha Brothers argue that the Court lacks jurisdiction because: (1) the Government's actions in removing them from Kenya while extradition proceedings were pending violated the United States' extradition treaty with Kenya (the "Extradition Treaty," Dkt. No. 66, Ex. A), and (2) the Government's conduct in kidnapping the Akasha Brothers was so shocking and outrageous that it divested the Court of jurisdiction over the prosecution that flowed from that conduct. (See Def. Mem. of Law at 10-23.)
In opposition, the Government argues that the Motion should be denied because: (1) the Akasha Brothers lack standing to challenge the actions of the Kenyan government in delivering them to the United States government; (2) the Akasha Brothers' allegations of abuse at the hands of Kenyan police officers do not rise to the level of outrageous misconduct by agents of the United States government necessary to set forth a constitutional challenge to the Court's jurisdiction; and (3) even if the Akasha Brothers had alleged significant abuse by agents of the United States government, case law does not support the contention that such abuse would divest the Court of jurisdiction. (See"Government Brief" at 13-16, Dkt. No. 68.)
In reply, the Akasha Brothers argue that the requested documents are material to their defense because the requested documents may "shed light on the United States government's involvement in the kidnapping" and because the documents will demonstrate whether or not the Akasha Brothers were removed from Kenya pursuant to an expulsion or extradition order and consequently whether their removal was in compliance with the Extradition Treaty. ("Def. Reply Brief" at 3, Dkt. No. 69.)
II. DISCUSSION
A. Rule 16
In relevant part, Rule 16 provides that the Government "must permit the defendant to inspect and to copy ... documents, if the item is within the government's possession, custody, or control and ... the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). In order to compel the Government to produce certain evidence, a "defendant must make a prima facie showing of materiality, and must offer more than the conclusory allegation that the requested evidence is material." United States v. Urena, 989 F.Supp.2d 253, 261 (S.D.N.Y. 2013) (internal quotations marks and citations omitted). "Evidence is material if it 'could be used to counter the government's case or to bolster a defense.' " United States v. Ulbricht, 858 F.3d 71, 109 (2d Cir. 2017) (quoting *791 United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993) ).
"The 'materiality standard of Rule 16 normally is not a heavy burden.' " Urena, 989 F.Supp.2d at 261 (quoting United States v. Stein, 488 F.Supp.2d 350, 356 (S.D.N.Y. 2007) ). However, if the purported defense for which a defendant seeks to compel the production of certain documents is meritless as a matter of law, then the requested documents are not "material" for purposes of Rule 16. See United States v. Zelaya-Romero, No. 15-cr-174, 2018 WL 1033235, at *5 (S.D.N.Y. Feb. 21, 2018) (denying defendant's motion to compel the production of documents because the defendant lacked standing to raise the purported defense for which he sought the requested documents).
B. The Ker-Frisbie Doctrine
As a general principle, "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' " Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952) (citing Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421 (1886) ). This so-called " Ker- Frisbie doctrine," "rest[s] on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." Id.
However, courts have recognized some limited exceptions to the Ker- Frisbie doctrine, "guided by the underlying principle that the government should be denied the right to exploit its own illegal conduct, and when an accused is kidnapped and forcibly brought within the jurisdiction, the court's acquisition of power over his person represents the fruits of the government's exploitation of its own misconduct." United States v. Toscanino, 500 F.2d 267, 275 (2d Cir. 1974), abrogated on other grounds by In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 157, 167 (2d Cir. 2008). Consequently, the Ker- Frisbie doctrine does not apply, and a court will lack jurisdiction over a defendant's prosecution, where "(1) the transfer of the defendant violated the applicable extradition treaty, or (2) the United States government engaged in misconduct of the most shocking and outrageous kind to obtain his presence." United States v. Anderson, 472 F.3d 662, 666 (9th Cir. 2006) (internal quotation marks and citations omitted); see also United States v. Umeh, 527 F. App'x 57, 64 (2d Cir. 2013) ; U.S. ex rel. Lujan v. Gengler, 510 F.2d 62, 66 (2d Cir. 1975) ; Toscanino, 500 F.2d at 275 ; United States v. Salinas Doria, No. 01-cr-21, 2008 WL 4684229, at *5 (S.D.N.Y. Oct. 21, 2008).
With respect to the first exception, only a violation of an explicit provision of an extradition treaty may divest a court of jurisdiction. See United States v. Alvarez-Machain, 504 U.S. 655, 666, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). Additionally, unless a treaty expressly creates privately enforceable rights, an individual defendant generally lacks standing to raise a violation of an extradition treaty as a defense to prosecution. See United States v. Barinas, 865 F.3d 99, 105 (2d Cir. 2017) ; United States v. Garavito-Garcia, 827 F.3d 242, 246 (2d Cir. 2016). Thus, the first exception to the Ker- Frisbie doctrine generally applies only where the "offended sovereign" raises an official objection to the court's jurisdiction. Garavito-Garcia, 827 F.3d at 246.
In order to invoke the second exception to the Ker- Frisbie doctrine, a defendant will generally need to demonstrate *792 a "complex of shocking governmental conduct sufficient to convert an abduction which is simply illegal into one which sinks to a violation of due process." Lujan, 510 F.2d at 66. Thus, in Lujan, the Court of Appeals held that the defendant's abduction did not divest the Court of jurisdiction where he did not allege that his abductors committed "any acts of torture, terror, or custodial interrogation" during his transfer to the United States. Id. In contrast, in Toscanino, where the Court held that the defendant's allegations, if proven true, would divest the Court of jurisdiction, the defendant alleged that Uruguayan police officers, acting at the direction of the United States government, violently kidnapped the defendant and subsequently "brutally tortured" him, deprived him of food and sleep, and interrogated him for seventeen days. Id. at 64-65 (contrasting the facts of Lujan with those of Toscanino, 500 F.2d at 269-70 ).
Thus, in determining whether the Government conduct in bringing a defendant within a court's jurisdiction was so shocking as to violate due process, the chief inquiry is whether the facts of the case "fall[ ] on the Lujan side of the balance ... [or] on the Toscanino side." United States v. Reed, 639 F.2d 896, 901 (2d Cir. 1981). Additionally, in order to defend against prosecution based on governmental misconduct, a defendant must offer "some credible proof that the actions against him were taken by or at the direction of United States officials." Id.; see also United States v. Lira, 515 F.2d 68, 70 (2d Cir. 1975).[2]
C. Application
The Akasha Brothers move to compel the Government to "produce the extradition and/or expulsion documents in this matter," arguing that such documents will support a subsequent motion to dismiss the Superseding Indictment on the grounds that their transfer from Kenya to the Southern District of New York violated the Extradition Treaty and their due *793 process rights. (Def. Mem. of Law at 1-2.) However, even if proven true, the Akasha Brothers' allegations do not satisfy either exception to the Ker- Frisbie doctrine, and so the requested documents cannot be material to any non-frivolous defense to prosecution.
With respect to the first exception to the Ker- Frisbie doctrine, the Akasha Brothers lack standing to challenge their prosecution on the basis of any alleged violation of the Extradition Treaty; there is no indication that the government of Kenya has raised any objection to the prosecution of the Akasha Brothers in this Court, and the Extradition Treaty does not explicitly create privately enforceable rights. (See Extradition Treaty); Barinas, 865 F.3d at 105 ; Garavito-Garcia, 827 F.3d at 246.
Additionally, even if the Akasha Brothers did have standing to challenge a violation of the Extradition Treaty, the Akasha Brothers fail to allege any such violation. The Akasha Brothers' allegations that they were removed from Kenya before they were formally extradited do not run afoul of any provisions of the Treaty, which sets forth rules for extradition, but does not state that extradition is the sole mechanism by which a Kenyan national may be transferred to the United States for criminal prosecution. See Alvarez-Machain, 504 U.S. at 666, 112 S.Ct. 2188 (holding that no treaty violation occurred where the treaty at issue did not explicitly "prohibit[ ] abductions outside of its terms" and declining to interpret the treaty as imposing "an implied term prohibiting prosecution where the defendant's presence is obtained by means other than those established by the Treaty"). Indeed, all of the Treaty provisions that the Akasha Brothers point to as having been violated by their removal to the United States set forth rules for extradition and not for removal generally. (E.g., Extradition Treaty at Article 4 ("The extradition shall not take place if the person claimed ... is still under trial in the territories of the High Contracting Party applied to, for the crime or offense for which his extradition is demanded."); id. at Article 8 (providing that "[t]he extradition" must conform to the laws of the territory from which a defendant is to be extradited).)
The Akasha Brothers argue that their transfer from the custody of Kenyan police officers to United States agents ran afoul of direct orders from the High Court of Kenya prohibiting the Kenyan Law Enforcement Agents from removing the Akasha Brothers from the jurisdiction of the Kenyan courts. However, "United States courts do not review challenges to foreign authorities' compliance with their own domestic law in granting a removal request by this country." United States v. Hertular, 562 F.3d 433, 450 (2d Cir. 2009) ; see also United States v. Umeh, 527 F. App'x 57, 64 (2d Cir. 2013) ("[A] United States court is not required to assure itself that a foreign country has observed its own internal procedures in delivering up defendants ...."). The issue for purposes of this Court's jurisdiction is whether the Akasha Brothers' transfer to the United States violated the Extradition Treaty and not whether it violated any of Kenya's domestic laws. Thus, whether Kenyan Law Enforcement Agents complied with the orders of Kenyan courts in transferring the Akasha Brothers to the custody of the United States is irrelevant to the present inquiry.[3]
*794 Because the Akasha Brothers lack standing to raise a violation of the Extradition Treaty, and because any such challenge would lack merit if they did have standing to raise it, the Akasha Brothers have not put forth a prima facie case that any documents they demand from the Government could support a non-frivolous defense based on the first exception to the Ker- Frisbie doctrine.
With respect to the second exception to the Ker- Frisbie doctrine, the Akasha Brothers argue that because their transfer to the United States was precipitated by Kenyan police officers' kidnapping of Ibrahim Akasha Abdalla, followed by a two-day violent interrogation, the Court lacks jurisdiction over the prosecution that flows from that violent conduct. However, these allegations, if true, charge only Kenyan officials with violent conduct against Ibrahim Akasha Abdalla. The Akasha Brothers do not claim that they suffered any violence, custodial interrogation, or torture at the hands of United States officials. Additionally, there is no reason to believe that the documents the Akasha Brothers seek to compel-"extradition and/or expulsion documents" (Motion at 2)-could plausibly demonstrate that agents of the United States government directed Kenyan officials to engage in any of the alleged violent conduct. See United States v. Scully, 108 F.Supp.3d 59, 123 (E.D.N.Y. 2015) (" Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among items possessed by the Government on the chance that something impeaching might turn up." (internal quotation marks omitted) ).
The Akasha Brothers thus fail to show that if the Motion were granted they would be able to produce "some credible proof that the actions against [them] were taken by or at the direction of United States officials." Reed, 639 F.2d at 901. Consequently, the Court need not determine whether the allegations, if they had been perpetrated or directed by United States officials, would amount to "shocking governmental conduct sufficient to convert an abduction which is simply illegal into one which sinks to a violation of due process." Lujan, 510 F.2d at 66.
The Akasha Brothers fail to make a prima facie showing that the documents they seek from the Government would be material to any non-frivolous defense to their prosecution. See Urena, 989 F.Supp.2d at 261 (stating that a "defendant must make a prima facie showing of materiality" in order to compel the Government to produce documents under Rule 16 ). The Akasha Brothers' motion to compel document production from the Government is therefore denied.
III. ORDER
For the reasons stated above, it is hereby
ORDERED that the motion (Dkt. No. 65) of defendants Baktash Akasha Abdalla and Ibrahim Akasha Abdalla to compel the Government to produce documents related to their extradition and/or expulsion from Kenya under Rule 16 of the Federal Rules of Criminal Procedure is DENIED.
SO ORDERED.

The operative charging document, referred to here as the "Superseding Indictment," is actually the ninth superseding indictment brought in this case. (See Dkt. No. 55.)

The Government appears to question whether Toscanino remains in effect in light of subsequent Supreme Court decisions, and decisions in this District, that have continued to apply the Ker-Frisbie doctrine in the years since the Court of Appeals issued the Toscanino decision. (See Government Brief at 8-13.) To be sure, some recent decisions in this District have interpreted Toscanino to be essentially limited to its particular facts. See, e.g., United States v. al Liby, 23 F.Supp.3d 194, 198 (S.D.N.Y. 2014) ; United States v. Umeh, 762 F.Supp.2d 658, 662-63 (S.D.N.Y. 2011), aff'd, 527 F. App'x 57 (2d Cir. 2013) ; United States v. Ghailani, 751 F.Supp.2d 502, 507 (S.D.N.Y. 2010). Nonetheless, the decision remains good law in this Circuit where Government conduct is sufficiently shocking to transform an abduction from one that is "simply illegal into one which sinks to a violation of due process." Lujan, 510 F.2d at 66 ; see also Reed, 639 F.2d at 901-02 ; Ghailani, 751 F.Supp.2d at 507 ; United States v. Noorzai, 545 F.Supp.2d 346, 352 (S.D.N.Y. 2008), aff'd in part, 422 F. App'x 54 (2d Cir. 2011). The Supreme Court decisions cited by the Government do not invalidate this rule, as they did not address challenges to the courts' jurisdiction on the basis that the defendants were brought to the United States as a result of violence or torture perpetrated by United States officials. See, e.g., United States v. Alvarez-Machain, 504 U.S. 655, 670, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992) (declining to deviate from the Ker-Frisbie doctrine where the abduction at issue did not violate the applicable treaty and the defense did not rely on any alleged violence in challenging the court's jurisdiction); I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (holding that the "body" of a defendant is not suppressible as the fruit of an unlawful arrest where the challenged arrest occurred within the United States). Consequently, a defendant's abduction and transfer to the United States may divest a court of jurisdiction if it involved shocking acts of violence, torture or custodial interrogation perpetrated by or at the direction of United States officials. See Reed, 639 F.2d at 901 ; Noorzai, 545 F.Supp.2d at 352.

To be sure, if the Extradition Treaty had been violated as a result of a violation of the domestic laws of Kenya, then the alleged violations of Kenya's domestic laws could be pertinent to this Court's jurisdiction. But, as discussed above, the Extradition Treaty does not apply where, as here, the transfer of the defendants did not occur through extradition. (See Extradition Treaty at Article 8 (providing that "[t]he extradition" must conform to the laws of the territory from which a defendant is to be extradited but making no mention of other methods of removing a defendant from the territory).)