VICTOR MARRERO, United States District Judge
Defendants Baktash Akasha Abdalla ("B. Abdalla"), Ibrahim Akasha Abdalla ("I. Abdalla"), Gulam Hussein, Vijaygiri Anandgiri Goswami, and Muhammad Asif Hafeez are charged with orchestrating an international narcotics conspiracy based in Kenya, with a distribution network that included the United States. (See"Superseding Indictment," Dkt. No. 55.) Trial of Baktash and Ibrahim Akasha Abdalla (collectively, "Defendants") is scheduled to begin before this Court on October 29, 2018. In light of the upcoming trial, the Government has filed a motion in limine seeking: to allow admission of certain evidence related to uncharged drug trafficking and acts of violence; to preclude Defendants from offering an entrapment defense; to preclude Defendants from offering evidence of, or otherwise discussing, purported improper conduct related to their expulsion from Kenya; and to impose certain security measures at trial. (See"Government Motion," Dkt. No. 90.)
For the following reasons, the Government Motion is GRANTED in part and DENIED in part.
I. BACKGROUND
On December 7, 2017, the Government filed the Superseding Indictment charging Defendants with conspiring to manufacture and distribute heroin, knowing and intending that it would be imported into *424 the United States (Count One); conspiring to manufacture and distribute methamphetamine, knowing and intending that it would be imported into the United States (Count Two); distributing and aiding and abetting the distribution of heroin, knowing and intending that it would be imported into the United States (Count Three); distributing and aiding and abetting the distribution of methamphetamine, knowing and intending that it would be imported into the United States (Count Four); conspiring to use and carry firearms during and in relation to the offenses charged in Counts One through Four (Count Five); using, carrying, and brandishing a firearm during and in relation to the offenses charged in Counts One through Four and possessing and brandishing firearms in furtherance of the same offenses (Count Six); and conspiring to obstruct, influence, and impede an official proceeding (Count Seven). (See Superseding Indictment.)
On September 23, 2018, the Government filed a motion in limine requesting various rulings prior to the start of trial. (See Government Motion.) Specifically, the Government seeks: (1) a ruling that evidence of the Defendants' involvement in drug trafficking and acts of violence in and around 2014 through 2017 is direct proof of the charges in the Superseding Indictment (see id. at 7-24) or, alternatively, a ruling that such evidence is admissible pursuant to Federal Rule of Evidence 404(b) (see id. at 24-29); (2) to preclude Defendants from presenting an entrapment defense at trial (see id. at 29-33); (3) to preclude Defendants from offering commentary, argument, questioning, or evidence regarding purported improper conduct related to their expulsion from Kenya (see id. at 33-35); and (4) the implementation of certain security measures at trial (see id. at 35-42).
On October 4, 2018, I. Abdalla filed an opposition to the Government Motion. (See"I. Abdalla Opposition," Dkt. No. 106.) I. Abdalla asserts that the Government's proffered evidence of drug trafficking and acts of violence is not direct evidence of the crimes charged and is, moreover, unfairly prejudicial, under Federal Rule of Evidence 403, to I. Abdalla because it improperly groups I. Abdalla with his co-defendant B. Abdalla. (See id. at 2-9.) Furthermore, I. Abdalla argues, such evidence is inadmissible under Federal Rule of Evidence 404(b). (See id. at 9-11.) I. Abdalla also argues that a pretrial ruling on an entrapment defense would be premature (see id. at 11); the Court should allow I. Abdalla to offer commentary, argument, questioning, and evidence regarding purported improper conduct related to his expulsion from Kenya (see id. at 12); and the Court should deny the Government's requested security measures to the extent those measures forbid the disclosure of the identities of the confidential sources to Defendants (see id. at 13). Finally, in the event the Court grants any part of the Government Motion, I. Abdalla requests that the Court sever the trial of Defendants. (See id. at 14-17.)
On October 19, 2018, B. Abdalla filed an opposition to the Government Motion. (See"B. Abdalla Opposition," Dkt. No. 126, corrected version filed at Dkt. No. 127.) B. Abdalla opposes the Government's request for a ruling that certain evidence be deemed admissible, arguing that the evidence of uncharged drug-trafficking transactions and acts of violence should be excluded as irrelevant. B. Abdalla asserts that his defense will be that he did not commit the crimes charged in the Superseding Indictment, thus making the evidence contemplated by the Government Motion inadmissible under Federal Rule of Evidence 404(b). (See id. at 3-6.) B. Abdalla also argues that the Government's requests to preclude an entrapment defense and evidence or discussion of purported *425 misconduct related to Defendants' expulsion from Kenya are premature. (See id. at 6.) Finally, B. Abdalla joins in the I. Abdalla Opposition. (See id. at 6.)
On October 20, 2018, the Government notified the Court that it would not file a reply in further support of the Government Motion. (See Dkt. No. 13 0.)
II. DISCUSSION
A. Motion for a Ruling on the Admissibility of Evidence of the Defendants' Drug Trafficking and Acts of Violence
The Government argues that the offenses charged in the Superseding Indictment were part of an "extensive international drug-trafficking business" operated by the Defendants. (Government Motion at 7.) As such, the Government contends that evidence of the Defendants' involvement in uncharged drug-trafficking transactions and related acts of violence is admissible as direct proof of the crimes charged in the Superseding Indictment. (See id. ) In the alternative, the Government asserts that such evidence is admissible pursuant to Federal Rule of Evidence 404(b) (" Rule 404(b)") because it provides important background for the charges in the Superseding Indictment. (See id. at 24-29.) Specifically, the Government seeks a ruling on the admissibility of evidence related to: (1) Defendants' trafficking of Mandrax precursor; (2) Defendants' trafficking of cocaine; (3) Defendants' trafficking of ephedrine; (4) Defendants' involvement in the kidnapping and assault of David Armstrong ("Armstrong"); (5) Defendants' involvement in an armed altercation with a person named Lemondo; and (6) Defendants' involvement in the murder of a person named Pinky. (See id. at 7-14.)
I. Abdalla opposes the Government's request, arguing that the evidence is not direct evidence of the charges in the Superseding Indictment and, moreover, is unfairly prejudicial to I. Abdalla because it improperly groups him with his co-defendant, B. Abdalla. (See I. Abdalla Opposition at 2-11.) B. Abdalla also opposes the Government's request, arguing that the Government should be precluded from offering at trial the other acts evidence described in the Government Motion. (See B. Abdalla Opposition at 3-6.)
Rule 404(b) prohibits the introduction of evidence of crimes, wrongs, or other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible" to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Court of Appeals for the Second Circuit "follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under [Federal Rule of Evidence] 403 or not relevant under [Federal Rule of Evidence] 402." United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008) ; see also United States v. Dupree, 870 F.3d 62, 76 (2d Cir. 2017) ("Under our Circuit's inclusionary approach, prior act evidence is admissible if offered for any purpose other than to show a defendant's criminal propensity.") (internal quotation marks omitted).
The Rule 404(b) analysis requires a court first to determine whether the contemplated evidence concerns bad acts other than the charged crimes. Evidence of an uncharged crime is not considered other crimes evidence -- and therefore not subject to Rule 404(b) analysis -- if it (1) "arose out of the same transaction *426 or series of transactions as the charged offense," (2) "is inextricably intertwined with the evidence regarding the charged offense," or (3) "is necessary to complete the story of the crime [on] trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) ). Such evidence need not "directly establish an element of the offense charged," but rather, it can "provide background" for the alleged events, and may be admitted to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991). When defendants are charged with conspiracy, "the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy." United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983). In conspiracy cases, evidence of other crimes may be admitted "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) ; see also United States v. Romero-Padilla, 583 F.3d 126, 130 (2d Cir. 2009) (per curiam) ("Although the evidence did not concern the charged conspiracy, it was relevant background evidence inasmuch as it corroborated the charge that Ferro and Romero-Padilla were partners during the charged conspiracy and established that Romero-Padilla's participation in the charged conspiracy was at least in part motivated by his desire to acquire the funds necessary to complete the other contemplated transactions with Ferro. Accordingly, the evidence fell outside the ambit of Rule 404(b)'s prohibition on 'other crimes' evidence.").
Regarding the evidence at issue here, the Court considers each category in turn.
1. Trafficking of Mandrax Precursor, Cocaine, and Ephedrine
The Government requests that the Court admit evidence of the Defendants' involvement in trafficking of Mandrax precursor, cocaine, and ephedrine -- i.e., acts that are not charged in the Superseding Indictment. (See Government Motion at 7-11.) The Government argues that this evidence is admissible as direct proof of the Defendants' "extensive international drug-trafficking business" of which the charged offenses were a part. (Id. at 7.)
The Court is persuaded that evidence of these additional drug-trafficking transactions is admissible as direct evidence of the charges in the Superseding Indictment. The evidence described in the Government Motion consists of actions "done in furtherance of the alleged conspirac[ies]," which means that the actions are not " 'other' act[s] within the meaning of Rule 404(b)." United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992). Furthermore, the evidence helps to explain the relationships among the coconspirators. See United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009) (affirming the admission of evidence explaining how the relationship between co-conspirators developed); Romero-Padilla, 583 F.3d at 130. Specifically, the evidence of uncharged drug-trafficking transactions explains: how B. Abdalla and I. Abdalla knew the cooperating witness and their co-defendant Muhammad Asif Hafeez; the conversations between Defendants and the confidential source captured by audio recordings; why the Defendants used firearms in connection with the charged conspiracies; and how the Defendants obtained the proceeds that were allegedly used to pay the bribes charged in Count Seven. (See Government Motion at *427 8-11, 15-19.) The Court therefore grants the Government's request to admit such evidence as direct proof of the crimes charged in the Superseding Indictment.
2. Kidnapping and Assault of Armstrong and Armed Altercation with Lemondo
The Government requests that the Court admit evidence that the Defendants were involved in the kidnapping and assault of Armstrong, who allegedly participated in the trafficking of Mandrax precursor. (See Government Motion at 11-12.) According to the Government, the evidence will purportedly show that B. Abdalla brandished a firearm during the altercation. (See id. at 19.) The Government also requests that the Court admit evidence that the Defendants were involved in an armed altercation with a Kenyan politician known as "Lemondo," who allegedly threatened the Defendants on behalf of Armstrong. Further, the Government contends that the evidence will purportedly show that I. Abdalla brandished a firearm during the altercation. (See id. at 12-13.) The Government argues that evidence related to these two incidents is admissible as direct proof of Counts Five and Six, namely that Defendants carried, used, and possessed firearms in connection with the charged drug crimes. (See id. at 19-21.)
The Court is persuaded that evidence of the Defendants' involvement in the kidnapping and assault of Armstrong and the armed altercation with Lemondo is properly admissible in this case. The evidence described by the Government constitutes direct proof of the conduct charged in Counts Five and Six. Alternatively, the Court finds that the evidence would be admissible under Rule 404(b), which provides that evidence of prior bad acts "may" be admissible to establish, inter alia, "motive [and] opportunity[.]" Fed. R. Evid. 404(b). Evidence of the Defendants' involvement in acts of violence against Lemondo and Armstrong may be used to establish Defendants' opportunity to access and use firearms in furtherance of drug crimes. The Court therefore grants the Government's request to admit such evidence.
3. Murder of Pinky
The Government requests that the Court admit evidence that the Defendants conspired with the cooperating witness to have a person named "Pinky" murdered because Pinky threatened the Defendants and the cooperating witness. (See Government Motion at 13-14.) According to the Government, the evidence will purportedly show that Pinky threatened B. Abdalla, I. Abdalla, and the cooperating witness on behalf of Armstrong. (See id. at 13.) The Government contends that the evidence will allegedly show that the Defendants and the cooperating witness -- because of the threats made against them -- conspired to have Pinky killed, after which the cooperating witness hired a contract killer to murder Pinky. (See id. ) The Government argues that this evidence is admissible as direct proof that Defendants carried, used, and possessed firearms in connection with the charged crimes. (See id. at 19-21.) Alternatively, the Government argues that this evidence is admissible under Rule 404(b). (See id. at 24-29.)
The Court is not persuaded that evidence of the Defendants' involvement in the murder of Pinky is direct proof of the conduct charged in the Superseding Indictment. Counts Five and Six charge Defendants with conspiring to use and carry firearms and using, carrying, and brandishing a firearm during and in relation to the offenses charged in Counts One through Four. Counts One through Four charge Defendants with trafficking heroin and methamphetamine. The evidence regarding the murder of Pinky does not *428 relate to these offenses for two reasons. First, the evidence allegedly shows that the Defendants aided, abetted, and caused a contract killer to use a firearm, not that they themselves used, carried, or brandished a firearm. Second, Pinky was involved in the trafficking of Mandrax precursor, not heroin or methamphetamine. The Court is therefore not convinced that the murder of Pinky was sufficiently related to the offenses charged in the Superseding Indictment.
Nevertheless, the evidence related to the murder of Pinky meets the Rule 404(b) standard for admissibility. Under Rule 404(b), prior bad acts evidence is admissible "for any purpose other than to demonstrate criminal propensity." United States v. LaFlam, 369 F.3d 153, 155 (2d Cir. 2004). The Court finds that evidence related to the murder of Pinky is probative of the Defendants' opportunity to conspire to use and carry firearms in furtherance of drug crimes, as charged in Count Five of the Superseding Indictment. The Court also finds that the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403 ; see also Concepcion, 983 F.2d at 392. The Court therefore grants the Government's request to admit such evidence, but only to the extent that such evidence is not offered to show the Defendants' bad character.
B. Motion to Preclude an Entrapment Defense
The Government argues that the Court should preclude Defendants from offering an entrapment defense because, in the Government's view, Defendants will be unable to establish either that they were induced to commit the crimes or that they were not predisposed to commit the crimes. (See Government Motion at 29-33.) In the event the Court denies the Government Motion and Defendants fail, at trial, to marshal evidence sufficient to support an entrapment defense, the Government requests that the Court provide the jury with an instruction that entrapment is not a defense in this case. (See id. at 32-33.)
A "valid entrapment defense" requires two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). The defendant bears "the burden of showing inducement" and, "if inducement is shown, the prosecution has the burden of proving predisposition beyond a reasonable doubt." United States v. Cromitie, 727 F.3d 194, 204 (2d Cir. 2013) (internal citations omitted).
The Government urges the Court to "preclude the [D]efendants from relying on the [entrapment] defense unless and until they proffer evidence to support such an argument." (Government Motion at 32 (emphasis added).) At this point, it is unclear whether the evidence presented at trial will be sufficient to establish the elements of an entrapment defense. That does not mean, however, that Defendants should be preemptively foreclosed from offering such evidence. Because the Court cannot determine at this time whether the Defendants will bear their burden of showing inducement, the Court denies as premature the Government's request to preclude an entrapment defense. If at trial, however, the Defendants are unable to present evidence sufficient to support an entrapment defense, the Court will instruct the jury that entrapment is not a defense in this case.
C. Motion to Preclude Evidence or Discussion of Purported Misconduct Related to Defendants' Expulsion from Kenya
The Government argues that Defendants should be precluded from offering *429 evidence of, or otherwise discussing, the purported improper conduct of either United States or Kenyan government officials relating to the Defendants' expulsion from Kenya because, according to the Government, such claims are baseless, irrelevant, and risk confusing the jury. (See Government Motion at 33-35.)
In July, the Court determined that any outrageous conduct related to the Defendants' expulsion from Kenya was committed by Kenyan officials, not the United States government. See United States v. Akasha Abdalla, 317 F.Supp.3d 786, 794 (S.D.N.Y. 2018) ("The Akasha Brothers do not claim that they suffered any violence, custodial interrogation, or torture at the hands of United States officials."). In September, the Court found that it has jurisdiction to try the instant case. United States v. Akasha Abdalla, 334 F.Supp.3d 582, 586, 2018 WL 4635669, at *3 (S.D.N.Y. 2018) (concluding that dismissal was not warranted based on a theory of manufactured jurisdiction, and that no violation of the United States-Kenya Extradition Treaty had occurred).
At trial, Defendants cannot relitigate the Court's prior decisions finding that their expulsion from Kenya is not at issue in this case. To the extent the Defendants seek to introduce evidence or otherwise argue that their expulsion from Kenya was unlawful, the Court grants the Government Motion to preclude the Defendants from doing so.
I. Abdalla urges the Court to allow him to question witnesses regarding his expulsion from Kenya. (See I. Abdalla Opposition at 12.) At this point, it is unclear whether any Kenyan official who was involved in the Defendants' expulsion from Kenya will testify at trial and, if so, what the scope of direct examination will be. To the extent the Defendants seek to examine any such witnesses regarding their expulsion from Kenya as a means of addressing the credibility of the witnesses, the Court denies the Government Motion as premature. However, the Court is skeptical that cross-examination of a witness regarding the Defendants' expulsion from Kenya would be proper for impeachment purposes. See Fed. R. Evid. 607 ; Fed. R. Evid. 611(b). The Government may, therefore, renew its objection to any such evidence, argument, or questioning at trial.
D. Motion to Implement Certain Security Measures
The Government urges the Court to impose security measures to protect from public disclosure the identities of three confidential sources, the 3500 material of cooperating witnesses (the "3500 Material"), and the features of sensitive recording devices used during the investigation of Defendants. (See Government Motion at 35-42.) On October 2, 2018, the Government notified the Court that the parties consented to a protective order regarding dissemination of the 3500 Material. (See Dkt. No. 103.) On October 3, 2018, the Court signed the protective order regarding the 3500 Material. (See Dkt. No. 104.) Thus, the Court will now consider only the Government Motion as it relates to the imposition of security measures to protect the identities of the confidential sources and the sensitive features of recording devices used during the investigation.
The law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988). The party asserting the *430 privilege bears the burden of showing that the privilege applies. See In re the City of New York, 607 F.3d 923, 944 (2d Cir. 2010).
Based on its review of the Government Motion and the I. Abdalla Opposition, as well as the Court's ex parte review of the September 23, 2018 Declaration of Special Agent James Stouch of the United States Drug Enforcement Administration (the "DEA") and the October 20, 2016 Declaration of Stanley Causey of the DEA, the Court is persuaded that the Government's requested security measures are appropriate. The requested security measures are reasonable, not unduly restrictive, and not unduly prejudicial to Defendants. The Government has shown to the Court's satisfaction that public disclosure of the true identities of the confidential sources would expose the safety and security of the sources and their relatives to significant risk. Similarly, the Government has demonstrated that public disclosure of the sensitive features of the recording devices used in the investigation of Defendants could interfere with thousands of ongoing Government investigations. Public disclosure of the sensitive features could also place law enforcement personnel and their affiliates in danger. Furthermore, the Court finds that these risks outweigh any potential prejudice to the Defendants.
The Court therefore grants the Government Motion regarding the imposition of security measures at trial to protect the identities of the confidential sources and the sensitive features of the recording devices used during the investigation of Defendants.
E. I. Abdalla's Motion to Sever the Trial
Having granted some parts of the Government Motion (see supra Sections II.A, II.C, and II.D), the Court now addresses I. Abdalla's request for a severance of the trials of Defendants. (See I. Abdalla Opposition at 14-17.)
Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment ... or a consolidation for trial appears to prejudice a defendant or the government, the court may ... sever the defendants' trials[.]" Fed. R. Crim. P. 14(a). A severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The defendant requesting a severance therefore "carries a heavy burden of showing that joinder will result in substantial prejudice." United States v. Al Fawwaz, 67 F.Supp.3d 581, 584-85 (S.D.N.Y. 2014) (quoting United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) ). However, "evidence is neither spillover nor prejudicial where, because of the alleged conspiratorial nature of the illegal activity, [it] would have been admissible at a separate trial of the moving defendant." Id. at 585-86 (internal quotation marks omitted).
The Second Circuit has determined that "a severance might be appropriate where some defendants are charged with serious violent crimes that will take months to [adjudicate at] trial, while other defendants are charged with less serious, non-violent offenses that could be quickly tried separately." United States v. Tuzman, 301 F.Supp.3d 430, 445 (S.D.N.Y. 2017) (citing United States v. DiNome, 954 F.2d 839, 844 (2d Cir. 1992) ). However, the mere existence of "some greater quantum of proof implicating one defendant compared to another ... does not justify severance" because "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, *431 are insufficient grounds for separate trials." Id. (quoting United States v. Kahale, 789 F.Supp.2d 359, 393 (E.D.N.Y. 2009) ); see also United States v. Spinelli, 352 F.3d 48, 55 (2d. Cir. 2003) ("There are, of course, cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his codefendant that a severance is required to prevent unacceptable spillover prejudice.").
A risk of prejudice is therefore not sufficient to warrant severance. When a risk of prejudice exists, "less drastic measures -- such as limiting instructions -- often suffice as an alternative to granting a Rule 14 severance motion." United States v. Feyrer, 333 F.3d 110, 113 (2d Cir. 2003). The Second Circuit has found that a limiting instruction can be sufficient specifically to cure any potential for spillover prejudice. See United States v. DeVillio, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (finding sufficient the district court's "explicit limiting instruction to the jurors"); United States v. Chang An-Lo, 851 F.2d 547, 556-57 (2d Cir. 1988) (finding a jury instruction sufficient despite defendants' claim that the "overwhelming majority of the evidence introduced at trial was not admissible against them").
A severance of the trials of I. Abdalla and B. Abdalla is not warranted because neither Defendant has shown that joinder will result in substantial prejudice. The instant case is distinguishable from the rare instances in which courts in this district have found severance to be warranted. Here, both Defendants are charged with the same crimes and trial is not expected to be lengthy. Even if I. Abdalla is correct in arguing that the Government will proffer more evidence against B. Abdalla than it will against I. Abdalla, the case law nevertheless supports joinder. See, e.g., Spinelli, 352 F.3d at 55-56 ("[M]uch of the evidence about [one defendant's] crimes would have been admissible at a separate trial of [the other defendant], since it was relevant to proving the nature and scope of the conspiracy in which both were, to differing degrees, involved."); Tuzman, 301 F.Supp.3d at 445. Because the Defendants are charged with conspiracy, the evidence against B. Abdalla would likely be admissible against I. Abdalla at a separate trial. See, e.g., Al Fawwaz, 67 F.Supp.3d at 585-86 ("[Defendants] are charged as co-conspirators in identical offenses. Accordingly, much -- if not all -- of the evidence admissible against [one defendant] relating to his alleged participation in these conspiracies is likely to be admissible also against [the other defendant] and vice-versa.").
Finally, the primary case to which I. Abdalla cites in favor of severing the trials of Defendants here, United States v. Moten, 564 F.2d 620 (2d Cir. 1977), ultimately concluded that severance was not warranted. In Moten, the Second Circuit affirmed the district court's denial of a motion for severance in a case involving twenty-two defendants, finding that "[a]lthough [it] was a comparatively long trial and involved numerous defendants, the issues were not so complicated as to be beyond the comprehension of the jury." Id. at 627. The issues in the present case, like those in Moten, are "not so complicated as to be beyond the comprehension of the jury," and, moreover, this case involves far fewer defendants. Id.
The Court therefore denies I. Abdalla's request to sever trial of Defendants. However, the Court will entertain a request for a limiting instruction, if appropriate.
III. ORDER
For the reasons stated above, it is hereby *432 ORDERED that the motion in limine of the Government (Dkt. No. 90) is GRANTED IN PART and DENIED IN PART. Specifically, it is
ORDERED that the Government's request for a ruling on the admissibility of evidence of drug trafficking and acts of violence is GRANTED on the terms outlined above; and it is further
ORDERED that the Government's request to preclude Defendants from offering an entrapment defense is DENIED; and it is further
ORDERED that the Government's request to preclude Defendants from offering evidence of, or otherwise discussing, purported improper conduct related to their expulsion from Kenya is GRANTED insofar as Defendants seek to introduce evidence or otherwise argue that their expulsion from Kenya was unlawful; and it is further
ORDERED that the Government's request to impose certain security measures to protect the identities of the confidential sources and the features of sensitive recording devices used during the investigation is GRANTED.
It is further ORDERED that Defendant Ibrahim Akasha Abdalla's request to sever the trial of Defendants (Dkt. No. 106) is DENIED.
SO ORDERED.